[No. 17405.    Department Two.    May 11, 1923.]

KATHERINE YENNEY, *Appellant,* v. PACIFIC NORTHWEST TRACTION COMPANY, *Respondent.*[1]

CARRIERS (97-107)—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE—LEAVING CONVEYANCE—QUESTION FOR JURY. The contributory negligence of a passenger on an interurban, thrown to the platform as she was stepping off the car at a station, just before or as it started, is for the jury, where she testified that the car was not in motion when she started to step off.

DAMAGES (111)—PERSONAL INJURIES—LOSS OF EARNING CAPACITY—EVIDENCE—ADMISSIBILITY. In an action for personal injuries to a married woman who had done practically all of the work in running a confectionery store and doing her housework, it is error, on an issue as to her imparied earning capacity, to exclude her testimony as to what her earnings had been prior to the accident and as to how much money she had been making in the past, covering some considerable period, since it tended to show what she was capable of earning before the accident.

TRIAL (71-1)—INSTRUCTIONS—PREPONDERANCE OF EVIDENCE. Upon an issue as to the amount of damages sustained through personal injuries, it is technically erroneous to tell the jury that it rests in their discretion to determine the amount from "the facts clearly proven"; since she need only prove her case by the preponderance of the evidence.

Appeal by plaintiff from a judgment of the superior court for King county, Griffiths, J., entered April 13, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort.    Reversed.

[1]Reported in 215 Pac. 38.

*Edwin James Brown* and *Earl G. Rice,* for appellant.
*James B. Howe* and *Hugh A. Tait,* for respondent.

PARKER, J.—The plaintiff, Mrs. Yenney, seeks recovery of damages for personal injuries claimed to have been suffered by her as the result of the negligence of the defendant traction company while she was alighting from one of its Everett-Seattle interurban cars at its 85th street and Greenwood avenue station in Seattle. A trial in the superior court for King county, sitting with a jury, resulted in a verdict awarding to plaintiff recovery in the sum of $750. Counsel for plaintiff, deeming the award inadequate in amount, and such inadequacy to have been the result of the erroneous exclusion of evidence offered at the trial in her behalf, moved for a new trial upon those and other grounds. This motion was overruled by the trial court and judgment rendered in accordance with the verdict, from which disposition of the cause plaintiff has appealed to this court.

We first notice the contention made in behalf of the traction company that the trial court erred in refusing to take the case from the jury upon motions timely made in its behalf challenging the sufficiency of the evidence to support any recovery by Mrs. Yenney. This contention, of course, is not made with a view of seeking a reversal of the judgment, since the traction company has not appealed therefrom; but is made with a view of demonstrating that, regardless of errors claimed to have been committed against her in the trial of the case, she has no cause to complain of such errors, for, at all events, she would recover more than she is in law entitled to. The argument is directed practically wholly to Mrs. Yenney's contributory negligence. For proper disposition of this question, we think her

own story is all that need be seriously considered here. Her testimony is in part as follows:

"We were living together as husband and wife on the 27th day of September, 1921. We were at Seattle Heights, County of Snohomish. I boarded a car of the defendant, Pacific Northwest Traction Company, at Seattle Heights, about 4 o'clock in the afternoon. I got on the car alone, paid my fare, got a ticket to Fremont. I asked the conductor to let me know when we got to Fremont. He said 'Yes.' Then he said something which I didn't understand and walked off. I was a passenger on the car until it got near the vicinity of 85th Avenue and Greenwood. I thought it was Fremont and asked some one in the car if it was Fremont, and they told me it was. I believed that I was at Fremont. I walked out and was going to look for the conductor and then I got down on the lower step and looked up and down for the conductor and I didn't see him. The conductor was not on the rear platform. I did not see any one on the rear platform. I had two parcels in my arms, about a foot square—in my left arm. When I got down on the lower step I am absolutely positive that the car was not in motion. . . . I stood in that position on the lower rear step about a minute or two looking for the conductor all that time. I am positive that the car was not in motion. I thought it was time to get off so I stepped off when I was thrown. I don't know what foot I stepped with. The car was in motion when I stepped off—just as I stepped off—but it was not in motion when I made up my mind to get off, and I stepped off immediately and I was thrown. . . . When I got to 85th and Greenwood I thought that was Fremont. The conductor hadn't told me we had reached Fremont. He had promised to let me know when I got there. The car had stopped at 85th and Greenwood perhaps two minutes before I got up out of my seat to get off. About five passengers got off. I was the last. Just as the last passenger got off I heard them mention Fremont and I turned around and they got off so I

thought that must be Fremont.    I heard the parties that got off mention Fremont.    .   .   .   ·The car didn't start while I was standing on the step.    When the car did start forward I guess I must have been half way between the step and the planking because when I was on the step it didn't start forward.    The car must have started when I was in the act of stepping off.''

The skillful cross-examination of Mrs. Yenney by counsel for the traction company brought out answers from her which, it may be conceded, furnish some room for arguing that her story of just what she heard, saw and did there is not wholly consistent; but we think that such inconsistency is not thereby shown so clearly as to compel the jury to believe her story, other than substantially in accordance with her testimony above quoted.    We have not overlooked some testimony of other witnesses touching the question of the time the car started with reference to the time she stepped off the lower step, which testimony furnishes some ground for arguing that she stepped off after the car had started.    That testimony, however, is not sufficiently certain as to the time of her stepping off the car with reference to its starting, to compel a finding that she stepped off after the car started.    We think this is in substance all the evidence having any substantial bearing upon the question of her contributory negligence, and leaves that question one for the jury to decide. We conclude that the trial court did not err in refusing to take the case from the jury and decide, as a matter of law, that Mrs. Yenney could not recover in any amount.

It is contended in behalf of Mrs. Yenney that the trial court erred to her prejudice in excluding certain offered testimony touching the question of her loss of earning power by reason of her injuries, which con-

sisted of several bruises on and about her body, the fracturing of one of her ankle bones and severe injuries to the ankle joint. By reason of her injuries she was painfully afflicted for several months and thereby prevented from pursuing her usual business or avocation, not being able to resume the same even up to the time of the trial. She also incurred an expense of $375 for surgical, medical and hospital services. The jury awarded her $750, so it seems that she was awarded only $375 for pain and suffering and the loss of her earning power. We thus mention the general nature of her injuries, the expenses incurred by her and the amount the jury awarded her, not with a view of deciding that the award was inadequate to the extent of warranting us in holding that the trial court should have so decided and awarded a new trial solely upon that account, but to show the probable prejudice resulting to her by the exclusion of offered testimony tending to show her earning power and the loss thereof. In the giving and attempted giving of her testimony touching the nature of her work or business and her earning power, we note the following in the record:

"Prior to the 27th day of September, 1921, I was engaged in a confectionery and ice cream business located at 5411 Meridian, Seattle. I had house-work to do and the store to keep tidy. I made all the dishes. The first thing in the morning after I got up I tidied the store, dusted, and kept things in order. Did my house-work when I was not busy. If there were customers I would be in the store and do my house-work in between times. I did mostly all of my house-work prior to that time. Sometimes my husband was there and he would help. He was out at the ranch every day. I did all the work in connection with running this confectionery business if I was alone. I was alone when he was out at the ranch. He would be there days at a time and then he would come home and go again.

On an average he spent four to five days a week at the ranch during that period prior to the 27th day of September, 1921.

"Q. How much, if any, had your earnings been, per month, during the year prior to the 27th day of September, 1921? Mr. Tait: I object to that on the ground that it is evasive and seeking to draw out of the witness the very evidence which Your Honor has held could not be elicited. The Court: It seems to me, counsel, the objection ought to be sustained. . . . Mr. Brown: I will ask for an exception, if Your Honor please. The Court: Exception allowed. Q. (Mr. Brown) Now, Mrs. Yenney, were you in any way making any money prior to the 27th day of September, 1921? A. Yes. Q. How much money were you making? Mr. Tait: I make the same objection, if Your Honor please. . . . The Court: I think the objection should be sustained. Mr. Brown: I will ask for an exception, Your Honor. The Court: Exception allowed."

All this was followed by her testifying in substance that she had been unable to run her confectionery store or do any work of any nature whatsoever since the time she was injured, all because of such injury. We are quite at a loss to understand why Mrs. Yenney should not have been permitted to testify how much she had been earning and was capable of earning prior to the time she was injured, regardless of the manner of or in what business she may have been engaged in producing her earnings. There is nothing in what we have above quoted from the proceedings before the trial court that can be said to be an offer of proving future profits in the business in which she was engaged. Manifestly, what she had been earning in the past, covering some considerable period, would be some evidence tending to show that she was capable of earning something in the future. As we view this attempted proof of the loss of earning power, it was not

an attempt to prove past or prospective profits of her business as such, but merely to prove what she was capable of earning, and that her earning power had been taken away or in some measure diminished.

The decision of this court in *Pierce v. Seattle Elec. Co.,* 83 Wash. 141, 145 Pac. 228, seems all but conclusive in favor of Mrs. Yenney on this point, in view of the fact that she did practically all of the work in and about the management of her confectionery store, and that her earnings there were almost wholly the result of her own personal efforts rather than the investment of capital or the employment of others. In that case the court had under consideration plaintiff's testimony showing her earning power in a business in which she was skilled and contemplated again entering upon, though temporarily not engaged in at the time she was injured. In holding that her testimony showing her skill in such business, her intent to again presently engage in it, and that it was generally a profitable business, was admissible, Chief Justice Crow, speaking for the court, said:

"Defendant contends that this evidence was incompetent and prejudicial, the substance of its argument being that it amounted to a claim of damages for loss of profits in a contemplated business, and that loss of such profits cannot be shown as an element of damage. . . . She [plaintiff] insists that the evidence of which defendant complains was competent and admissible, not as a measure of damages for loss of profits, but as one of the elements entering into her principal case which, taken in connection with other evidence, had a tendency to show a loss of ability to work or transact business, and therefore, a resulting loss of earning capacity. The evidence was competent as tending to show a loss of earning capacity, and as no specific statement was made of any specific amount of anticipated profits which plaintiff claimed she had

lost, we fail to understand how the defendant was injured or prejudiced."

Observations made in our later decision in *Singer v. Martin*, 96 Wash. 231, 164 Pac. 1105, lend strong support to this view of the law.   While it was there held, because of the issues in that case, that the measure of damages must be confined to "loss of time or loss of personal earnings" as distinguished from loss to property, Chief Justice Ellis, speaking for the court, observed:

"But it does not follow, as counsel contended in the court below and intimates here, that all of the evidence to which these instructions were directed was improperly admitted.   Respondent's own testimony was plainly admissible as bearing upon the quality of his services, which were lost for a month, and as tending to throw light on his earning capacity.   Manifestly the services of a man who had built up and successfully managed for years a business of the magnitude of that shown in the evidence were worth much more than what it would have cost him to secure a wigmaker merely to take his place for a month in the matter of fitting wigs.   The whole business, as shown by the evidence, was largely dependent upon his own exertions.   It was, therefore, competent to show the character and magnitude of the business, the capital and assistance employed, and even the profits, not indeed as elements of damage, but merely as circumstances to be considered by the jury in determining the value of respondent's loss of his own services in the business because of the injury."

If Mrs. Yenney should not be permitted to testify as offered by the propounding of the above quoted questions, in view of the nature of her business and her almost exclusive personal attention thereto, we would be at a loss to know how anyone could prove loss of their earning power, except they be persons receiving fixed wages or salaries which may be stopped or

impaired in amount by receiving some injury. This record contains several other attempts of making proof and offers of proof similar to that above noticed, and it may be that the rulings thereon against Mrs. Yenney are in some measure justified, but we think what we have already said is sufficient guide to the court in disposing of those questions, should they arise upon another trial.

It is contended in behalf of Mrs. Yenney that the trial court erred to her prejudice in its instruction given to the jury as follows:

"The law does not furnish any mathematical or arbitrary rule by which the amount of damages in cases of this character shall be determined, but leaves that to the sound discretion and judgment of the jury *from the facts clearly proven.*"

We have italicized the words to be particularly noticed. These words, it is claimed, imposed a greater burden of proof upon Mrs. Yenney than the law requires; that is, that the words "clearly proven" were erroneously used, since they require proof of a greater degree of certainty than the usual expression "preponderance of evidence." We are inclined to the view that this was technically erroneous, but are not sure but that the error was cured by a number of other instructions which seem plainly to inform the jury that Mrs. Yenney need not prove her case beyond a preponderance of evidence. However, we think this error, if it was such, would hardly occur upon a new trial, and we notice it here only for the purpose of suggesting its curing at that time.

This action was commenced by Mrs. Yenney and her husband as plaintiffs, since which time, and before the trial, her husband died, and she was substituted as administratrix of his estate; the action being commenced manifestly upon the theory that it was the

seeking of recovery of a community right.    We have referred to Mrs. Yenney alone as plaintiff and appellant only for convenience of expression.

The judgment is reversed and Mrs. Yenney is awarded a new trial.

MAIN, C. J., FULLERTON, TOLMAN, and PEMBERTON, JJ., concur.