[File No. 7222]

PEARL UMPHREY for the use and benefit of herself and Kenneth Umphrey, John Umphrey, Luther Umphrey, Alberta Umphrey, William Umphrey, Jr., and Angeline Ann Umphrey, Respondent, v. WILLIE E. DEERY, Appellant.

(48 NW2d 897)

Opinion filed July 24, 1951. Rehearing denied Aug. 21, 1951.

*Hyland & Foster,* for appellant.

*George S. Register,* for respondent.

CHRISTIANSON, J.   This is an action to recover damages for the wrongful death of William F. Umphrey.  The plaintiff, Pearl Umphrey, is the widow of William F. Umphrey.   In the complaint it is alleged that William F. Umphrey died intestate in Bismarck on or about July 22, 1949, "leaving surviving him as his sole heirs at law, said Pearl Umphrey, and the following named children: Kenneth Umphrey, John Umphrey, Luther Umphrey, Alberta Umphrey, William Umphrey, Jr., and Angeline Ann Umphrey; that this action is brought by said

plaintiff as said surviving wife, for the use and benefit of herself and said surviving children, pursuant to the provisions of Chapter 32–21 of the North Dakota Revised Code of 1943." It is further alleged "that on or about July 20th, 1949, at about 6:30 o'clock P.M., said William F. Umphrey was driving his Ford automobile on United States Highway No. 10, near Sterling, North Dakota, in an easterly direction, in a careful and prudent manner and at a moderate rate of speed. That, at said time, the defendant herein was driving a Dodge automobile, on said highway, in an easterly direction, behind the said Ford automobile. That, at said time and place, the said defendant drove and operated the said Dodge automobile so negligently, carelessly and unlawfully, as to cause the said Dodge automobile to collide with the said Ford automobile, on said highway. That as the direct result of the said collision, and because of the negligence and carelessness of the defendant, the said Ford automobile was pushed, shoved, and caused to leave said highway, and overturn, and said William F. Umphrey received and suffered serious personal injuries from which injuries the said William F. Umphrey died. The aforesaid collision and the resulting injuries to and death of said William F. Umphrey, were directly and proximately caused by the negligence, carelessness, wrongful acts, neglect and defaults of the defendant, as follows: The defendant was careless and negligent in that he was driving the said Dodge automobile at an excessive rate of speed under the existing circumstances; he failed to keep a proper lookout; he failed to give any audible warning with his horn or other warning device upon approaching the said Ford automobile; he followed the said Ford automobile more closely than was reasonable and prudent under the existing circumstances; he failed to have his said automobile under proper control, and drove the same into, against and upon the said Ford automobile; he drove the said Dodge automobile without due caution and circumspection; and was in other respects generally careless and negligent in the operation of the said Dodge automobile."

It is further alleged that at the time of the said collision the said William F. Umphrey was maintaining a home for and supporting and living with the said surviving wife and surviving

children and that said surviving wife was then dependent upon William F. Umphrey for support and maintenance and each one and all of said children were then dependent upon said William F. Umphrey for support, maintenance and education. That the funeral expenses incurred in and about the burial of said deceased were approximately $550. That by reason of the premises, plaintiff has sustained and suffered damages and injury in the sum of $100,550.00.

In his answer the defendant denied the allegations of the complaint and alleged as a further defense "that on or about July 20, 1949, at about 6:30 P.M. he was driving a Dodge automobile in an easterly direction on United States Highway No. 10 near Sterling, North Dakota. That at said time and place he was driving his automobile at the legal rate of speed on the right hand side of the highway and to the right of the middle line thereof and was driving and operating his automobile in a careful and prudent manner with due regard for the conditions of the highway and the traffic thereon." That at said time and place the said William F. Umphrey was driving and operating a Ford automobile in an easterly direction on said highway and was operating said automobile at the speed of approximately fifty miles per hour and that as the automobile of the defendant approached the automobile driven by said Umphrey, the said Umphrey without giving any signal suddenly checked the speed of his automobile on said highway to a stop or almost a stop. That the defendant, upon observing the automobile of the said William F. Umphrey, signalled by sounding his horn and attempted to turn to his left so as to pass the said automobile, but the said William F. Umphrey, disregarding the signal by the horn, failed and neglected to move his automobile to the right so as to afford room for passing and slowed or stopped his said automobile immediately ahead of the automobile of the defendant, not affording the defendant sufficient space in which to go around the automobile of the said William F. Umphrey, causing the automobile of the defendant to collide with the rear end of the automobile of the said William F. Umphrey and being driven by him, and that if any injury resulted to any person or property by reason of said collision the same was caused by and was

the sole result of the negligent operation of the Ford automobile operated by William F. Umphrey and that the negligence of the said William F. Umphrey contributed to the said injuries if any.

The case was tried to a jury upon the issues framed by such pleadings. The jury returned a verdict in favor of the plaintiff for $32,000. Defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was denied and the defendant has appealed from the judgment and from the order denying his motion for judgment notwithstanding the verdict or for a new trial.

Appellant contends: (1) that the court erred in denying defendant's motion for dismissal of the action, in denying defendant's motion for a directed verdict and in denying defendant's motion for judgment notwithstanding the verdict or for a new trial; (2) that the court erred in its rulings on the admission of evidence; (3) that the court erred in its instructions to the jury; (4) that the evidence is insufficient to support the verdict; (5) that the jury allowed excessive damages appearing to have been given under the influence of passion and prejudice. It will be noted that the first and fourth assignments of error are predicated upon the alleged insufficiency of the evidence. These assignments will be considered together.

With respect to the accident the evidence adduced by the plaintiff shows:

"On July 20th, 1949, at about six o'clock P.M., William F. Umphrey was driving his Ford automobile on United States Highway No. 10, in an easterly direction, a short distance west of the Sterling corner in Burleigh County, North Dakota. He was a farmer, and he and his family resided about two and one-half miles northwest of Dawson, North Dakota. In the front seat, with Mr. Umphrey, were his wife and their infant child; in the rear seat were Betty McKenzie (sister of Mrs. Umphrey), and two of the Umphrey children—Alberta and William, Jr.

"Suddenly the Ford automobile was struck from the rear, thrown forward, and caused to go over into the ditch on the south side of the highway. At the time it came to a stop, it rested on its top, with the wheels in the air, facing west. At the

time of the collision, the Ford automobile was traveling about 35 miles per hour; this speed had been constant for some time prior to the accident; the Ford automobile was on the south side, in its right lane; the road at that place is almost straight, but slightly sloping; the Ford automobile was in good mechanical condition; that there was no warning signal of any kind prior to the collision.

"The automobile which struck the Ford automobile was a tan-colored Dodge automobile, then driven by the defendant, who was alone in his car. He was at the time of the accident traveling between 55 and 60 miles per hour; was on his way to his home in Jamestown, North Dakota, and was traveling in an easterly direction. Shortly before the collision, he had passed an automobile driven by Mr. George Baska. Mr. Baska's car was passed about two and one-half miles west of the scene of the accident. Mr. Baska saw the accident.

"At the time of the accident, Mr. Baska's car was about fifty rods west of the defendant's car. Coming from the east, was a large transport truck—this truck, at the time of the accident, was about twenty-five rods west of the collision. There was no other approaching traffic from the east, the highway was completely free of traffic, and it was light. The road was dry. From the west, there was a clear, unobstructed view of this highway, to the scene of the accident, for eight tenths of a mile. There was nothing bright or flashy about this transport truck.

"At the scene of the accident, the highway was of concrete asphalt; the width of the traveled portion of the highway was twenty-three feet; there was a middle line on the road. The Ford automobile, at the time of the collision, was on its own, or south, side of the highway, and in fact the left rear tire of the Ford automobile was eight feet north of the south edge of the oil top, as shown by the marks left by this tire on the highway. There were no marks on the highway such as would indicate that the defendant had applied his brakes prior to the collision. At approximately the center of the rear bumper of the Ford automobile there was a trailer hitch. The place at which the Ford

was struck by defendant's automobile was about two feet and three inches from the right end of the rear bumper of the Ford."

The testimony of the defendant was to the effect that:

"On the 20th day of July, 1949, at approximately six o'clock P.M. about a mile from Sterling, North Dakota, defendant was traveling in an easterly direction on the right side of the road. He was a salesman for Shilery-Onstad Inc., of Fargo, North Dakota. He was driving a Dodge automobile. Defendant passed a car driven by one Baska a few miles back. There was an aluminum truck coming from the east, and the sun was shining, which was as defendant states awfully bright, and just as he got up to the truck, defendant on the south side of the road and the truck on the north side of the road, the defendant was blinded for a few seconds. The sun was shining very brightly, and at that time he noticed the car ahead which, to him, looked like it was coming west.

"The sun was shining brightly and it looked to the defendant that the sun was shining on the windshield of a car coming west. Later, he learned that the sun was shining on the back window of a car which was driven in an easterly direction by William Umphrey, and as defendant says, before he knew it, he was on top of the car driven by William Umphrey, the plaintiff's husband. The car driven by William Umphrey was a 1930 Model A Ford. The defendant was driving at the rate of 50 or 60 miles an hour. The defendant applied the brakes as soon as he saw the car was on the south side of the road, but he could not stop, and collided with the car driven by William Umphrey. It shoved the Ford car into the ditch, and overturned the same, and William Umphrey was injured and died on the 22nd day of July, 1949. Defendant tried to pass the Ford car, but the right fender of the defendant's car hit the left rear of the Ford car and pushed the Ford car into the ditch."

The defendant testified that he stopped almost immediately after the collision. He said I "got out of my car and ran down and got the baby out and laid it down on the ground, then I helped Mrs. Umphrey out because I was afraid if it started on fire, it would be—or there would not be much chance to get them

out, so I did everything hurriedly to get them out." He further said that he was fearful of fire. That other people came and there was nothing further he could do and so he went back to his car. The evidence shows that following the accident other persons stopped and rendered such help as could be given. The Highway Patrol was called and one of the patrolmen came in response to the call. The deceased was removed from the scene of the accident to the St. Alexius Hospital at Bismarck, North Dakota. On July 22nd, two days after the accident occurred, Mr. Umphrey died as a result of the injuries he received in the collision. The plaintiff and the deceased were married on August 31, 1932. They had six children, issue of the marriage living with them. The names and ages of the children at the time of the accident were as follows: Kenneth—14 years, John—12 years, Luther—10 years, Alberta—6 years, William, Jr.—4 years, and Angeline Ann—born June 14, 1949. At the time of the death of William F. Umphrey he and his family lived on a farm two miles north of Dawson in Kidder County where they had lived for approximately nine years. At the time of the accident William F. Umphrey was 49 years of age and had a life expectancy of 22.12 years and the plaintiff, Pearl Umphrey, was 37 years of age and had a life expectancy of 31.75 years. All the children were physically well and mentally normal. The deceased was an experienced farmer and a trained mechanic and also did carpenter work. He had built the buildings on the farm. Mr. Umphrey was the sole support of his family; his wife and children were wholly dependent upon him. At the time of his death, Mr. Umphrey owned the following property: Four quarter sections of land, free from encumbrances; the buildings used and occupied by the family—which were on rented land; 28 head of cattle, consisting of eight milk cows, eight heifers, one bull, and 11 calves; and all the machinery used for his farming operations. The dwelling used by the family, as their home, was about a quarter mile from grade school, and about two and one-half miles from high school. Of the land owned by deceased, about 100 acres were under cultivation—the rest being pasture and hay land; of the rented land, about 60 acres were cultivated.

The deceased did practically all of his work in farming, including harvesting and did the milking with the assistance of his wife and son. He raised all the feed for the cattle on the place, and he did all the work incidental to raising the livestock; he raised all the vegetables used by the family; he raised pigs and poultry; all the meat used by the family came from the farm and Mr. Umphrey did the butchering. He sold eggs and cream. Each year, Mr. Umphrey worked about six weeks for others, for money—doing threshing, mechanical work and also carpentry work. Mr. Umphrey's earnings and income for 1948 were as follows:

From sale of cattle ................$945.00
From sale of eggs ..................  50.00
From sale of grain ................. 200.00
From sale of cream ................ 600.00
From services as township assessor ...  40.00
From work for others ..............  200.00
                                     ————
                          Total   $2035.00

He paid out for gas, oil, chicken feed, and seed, approximately $200.00 during 1948. The crop in 1948 was about average, the pastures were fair, all feed used on the place was raised thereon in 1948 as in previous years; he worked each year for others for about the same length of time—six weeks; all of the cattle sold in 1948 were increase and had been raised on the place; Mr. Umphrey had ten head of cattle in 1946, and some of the cattle sold in 1948 were there in 1947; cattle sold were replaced with calves and "junior stuff"; weather conditions, for crops, in 1948 in that vicinity were about normal. Mr. Umphrey was a man of excellent habits, a steady worker, sober and industrious. He was a good husband and father, and devoted to his family. He was honest and frugal. He did the gardening, he helped a great deal in the home—washed dishes, mixed bread, washed clothes, and at times did some other housework.

At the close of plaintiff's case defendant moved for a dismissal of the action on the grounds that there was no competent evidence establishing that the defendant was in any way negli-

gent in the operation of his automobile or that his negligence caused the death of William F. Umphrey and that there is no competent evidence "of any damages resulting to the plaintiff in this action by reason of the death of William F. Umphrey"; that "the evidence does not show any earning capacity of the deceased William F. Umphrey; does not in any manner separate or attempt to separate the amount of his receipts during the years from capital investment or labor; there is no testimony as to the value of his labor in any manner whatsoever; there is nothing in the action upon which the jury can form any opinion or reach any legal conclusion as to the damages resulting from the death of William F. Umphrey. To the contrary the evidence is wholly lacking with the exception of the evidence as to the funeral expenses, as to any basis upon which damages may be determined in any way in this action." Upon the denial of the motion to dismiss the action the defendant moved for a directed verdict on the same grounds. Such motion was denied. At the close of the entire case the defendant renewed the motion to dismiss the action and the motion for a directed verdict that were made at the close of plaintiff's case. The motions were denied and the case submitted to the jury and the jury returned a verdict in favor of the plaintiff for $32,000. After the verdict had been returned the defendant moved in the alternative for judgment notwithstanding the verdict or a new trial. On such motion the defendant specified as error the rulings of the trial court in denying his motion for dismissal and his motion for judgment notwithstanding the verdict. In such motion the defendant also specified that:

"The evidence is insufficient to support the verdict in the following particulars:

"The records show conclusively that no evidence was produced to show any damages.

"The law is that one who is injured on his person through the fault of another may recover for his damages sustained by being deprived of his earning powers and in this case there is no competent evidence to show any loss of earning power of deceased.

"That all the evidence offered by plaintiff to show any earning power of the deceased is entirely speculative and inadmissible since this is an action founded on damage for death caused by wrongful act through negligence of the defendant as set forth in Chapter 32–2101, 1943 Revised Code of North Dakota.

"Damages are not pleaded nor proved and no damage is allowable except what plaintiff could be expected to receive from the deceased if he was living, and there is no evidence or proof of any kind to show such expected support in any amount, and there is nothing to show which amount the jury allowed for funeral expenses and nothing to show how much they allowed for damages, and there is no evidence to, in any manner, separate the receipt for capital invested and his personal earnings, and there is nothing to show the value of his labor."

It will be noted that the motion for dismissal of the action and the motion for a directed verdict challenged the sufficiency of the evidence in two particulars. Such motions asserted (1) that there was no competent evidence to establish negligence on the part of the defendant or that negligence on the part of the defendant caused the death of William F. Umphrey; and (2) that there was no competent evidence to show that any damages had been sustained by the plaintiff. In the specifications of insufficiency of the evidence no reference is made to the alleged insufficiency of the evidence to establish actionable negligence and the specifications of insufficiency are directed solely to the claim there was no competent evidence showing that plaintiff had sustained any damages. In this court no reference was made to the contention that the evidence was insufficient to establish actionable negligence on the part of the plaintiff, and the only contention made as to alleged insufficiency of the evidence is that there was no competent or adequate proof of damages.

Little need be said about the contention advanced in the motion for a directed verdict that there was no proof of actionable negligence so as to require the submission of that issue to the jury. Under the evidence in this case such contention is wholly untenable. There was ample evidence to require the submission and to sustain the finding of the jury on such question.

Was there evidence tending to show damages, requiring the submission of the question of damages to the jury and to sustain the finding by the jury that damages had been sustained and the plaintiff entitled to a recovery? This question must be answered in the affirmative. The statute under which this action is brought provides:

"In an action brought under the provisions of this chapter, the jury shall give such damages as it finds proportionate to the injury resulting from the death to the persons entitled to the recovery." NDRC 1943, 32-2102.

It will be noted that this statute does not in terms restrict the right of recovery to injuries of a particular character. The statute specifically imposes upon the jury the duty in any and all cases arising under the law to "give such damages as it finds proportionate to the injury resulting from the death to the persons entitled to the recovery." In construing the statute this court has held that in an action thereunder damages are to be awarded only for pecuniary loss and may not be awarded for loss of society and companionship or in the way of solatium, but that the plaintiff in such action is entitled to recover the pecuniary value of services which the beneficiary or beneficiaries under the statute might reasonably have expected from the person on account of whose death the action was brought. Stejskal v. Darrow, 55 ND 606, 215 NW 83, 53 ALR 1096.

It is the contention of the defendant that under the statute as thus construed by this court recovery is limited to the then immediate loss in money to the plaintiff and the minor children resulting from the death of the husband and father and that this in turn is dependent upon and measured by the loss of the earning power of the deceased resulting from his death. This theory was presented throughout the various stages of the trial. Thus when plaintiff was asked if she knew how much income the deceased had during the year 1948 it was objected to "as incompetent, irrelevant and immaterial—how much cash income he had derived from any source has nothing to do with his earning capacity. Earning capacity is the only element."

In its instructions to the jury the court quoted the general statutory definition of damages in actions for tort, which reads

as follows: "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." NDRC 1943, 32–0301.

Concerning this instruction it is said in appellant's brief:

"This is confusing, as it does not apply to an action of this kind under the evidence properly received in this case. *The only question involved for the jury to decide was the present cash value of the services expected to be performed by the decedent,* and therefore, the general statement of the law with reference to Tort actions generally does not apply and is confusing to the jury." (Italics supplied).

Again it is said in appellant's brief that "the damages in this kind of case must be governed and governed *only by the cash earning value of the decedent."* (Italics supplied).

When this court stated in its opinion in Stejskal v. Darrow, supra, that the statute provided for compensation only for pecuniary loss, there was no intention, (and the language of the opinion does not so indicate), that the word "pecuniary" should be given any such restricted and narrow meaning as the appellant seeks to place upon it.

The term "pecuniary" as applied to damages allowable under a death statute has been considered by legal writers and by the courts of last resort in many jurisdictions. In some of the states the term "pecuniary" occurs in the statute providing for an action for wrongful death thus restricting damages recoverable in such action to pecuniary injuries or pecuniary losses, and where the term "pecuniary" is found in the statute the courts have held that it should not be construed or applied in a strict narrow sense and as meaning only the immediate loss of money or property. 5 Sutherland on Damages, 4th ed., p. 4859; Tilley v. The Hudson River RR. Co., 24 NY 471, 475–476; McIntyre v. N. Y. Central RR. Co., 37 NY 287; The St. Lawrence and Ottawa Railway v. Lett, 11 Can Sup Ct Reps 422. And obviously the term "pecuniary" should not be given a more narrow or restricted meaning where it is in effect inserted in the statute by judicial interpretation than where it has been inserted in the law by the lawmakers.

In the decision in The St. Lawrence and Ottawa Railway v. Lett, supra, the Supreme Court of Canada, speaking through Chief Justice Ritchie, said:

"I cannot think the injury contemplated by the legislature ought to be confined to a pecuniary interest in a sense so limited as only to embrace loss of money or property, but that, as in the case of a husband in reference to the loss of a wife, so, in the case of children, the loss of a mother may involve many things which may be regarded as of a pecuniary character. The term pecuniary is not used by the legislature, and this, of itself, I think, affords a good reason for saying that that term should not be introduced in a narrow confined sense as applicable only to an immediate loss of money or property. In several of the United States of America, where the word pecuniary is introduced into a statute, it is not construed in a strict sense, and is held not to exclude the loss of maintenance or of the intellectual, moral and physical training which a mother only can give to her children. Therefore, *a fortiori,* the word should not be judicially introduced into our statute with a view to a narrow and strict construction." 11 Can Sup Ct Rep at p. 426.

American Jurisprudence (16 Am Jur, Death, Sec. 182, pp. 122–123) says:

"The word 'pecuniary,' where it occurs in death statutes, is not used in a sense of the immediate loss of money or property. It looks to prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded. Pecuniary loss is, therefore, not dependent upon the actual earning of money or money's worth or contributions to the support of the beneficiaries at or before the date of the death, where there was a reasonable expectation of pecuniary benefit from the continuance of the life. It consists not only of the loss of financial assistance which the beneficiaries might reasonably be expected to have received from the deceased had his career not been shortened by the act of the defendant, but also the loss of other things which have a pecuniary worth. A wrongful death statute confining the damages recoverable to compensation for pecuniary loss merely intends

that no compensation be given for the loss of things which have not a definite pecuniary value."

Thus, in the State of New York the statute provided that in such action the damages awarded to the plaintiff may be such sum as the jury, or where the issues are tried without a jury, the court or the referee, "deems to be a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought." Baldwin's New York Consolidated Laws Ann 1938, Decedent Estate Law, Sec 132; Laws 1935, ch 224; Laws 1847, ch 450, p 575; McKinney's NY Consol Laws Ann c 13, Decedent Estate Law § 132; Laws 1934, ch 224; Laws 1847, ch 450, p 575.

In Tilley v. The Hudson River RR. Co., supra, the Court of Appeals of New York had occasion to consider the question of damages to be awarded under the New York statute. The court said:

"The injury to the children of the deceased by the death of their mother was a legitimate ground of damages; and we do not agree with the defendants' counsel, that they ought to have been nominal. The difficulty upon this point arises from the employment of the word *pecuniary* in the statute; but it was not used in a sense so limited as to confine it to the immediate loss of money or property; for if that were so, there is scarcely a case where any amount of damages could be recovered. It looks to prospective advantages of a pecuniary nature, which have been cut off by the premature death of the person from whom they would have proceeded; and the word *pecuniary* was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship of relatives, which are equally incapable of being defined by any recognized measure of value. But infant children sustain a loss from the death of their parents, and especially of their mother, of a different kind. She owes them the duty of nurture and of intellectual, moral and physical training, and of such instruction as can only proceed from a mother. . . . The children

have been deprived of that which they were entitled to receive, by the wrongful act of the defendants. Their loss may or may not be made up to them from another source; but, in the meantime, they are entitled to a fair and just compensation from the wrongdoers by the provisions of this statute." 24 NY Rep pp. 475–476.

In McIntyre v. N. Y. Central RR. Co., 37 NY 286, 295, in the concurring opinion of Judge Fullerton, it is said:

"When we consider the defect which the statute was designed to remedy, it was taking too narrow a view of the matter to say that the word pecuniary was used in so limited a sense as to embrace only the loss of money.

"Such a limitation would, in many cases, render the statute a mere mockery, because it would afford no substantial aid in the very case in which it is most needed. The loss of the society of a deceased relative, the injury to the affections of those surviving, cannot be regarded as being within the remedy of the statute, because in no sense can the loss be regarded as pecuniary. But to children the loss of a parent involves the loss of many other things which this court has heretofore regarded as of a pecuniary character, and as the subjects of consideration by a jury in assessing the damages under the statute."

This court had occasion to consider questions relating to the pleading, proof and allowance of damages under the act in Haug v. Railway Co., 8 ND 23, 77 NW 97. In that case the defendant challenged the sufficiency of the complaint because it contained no specific allegations showing that the plaintiff, the wife of the deceased, or the heirs of the deceased had suffered any pecuniary loss or damage by reason of his death and it was claimed that the complaint failed to state a cause of action. In disposing of that contention this court, after referring to decisions in other states dealing with a similar question under similar statutes, said:

"In Korrady v. Railway Co., 131 Ind 261, 29 NE Rep 1069, Chief Justice Elliot, speaking for the full bench, said: 'The appellee's contention that the complaint is bad because it does not specifically show that actual damages were sustained by the widow and infant children of the appellant's intestate cannot

prevail. Where a complaint charges a railroad company with wrongfully killing a person, shows that the person so killed was free from contributory fault, and that he left a widow and infant children surviving him, a cause of action is stated, although it is not directly alleged that the surviving kinsfolk sustained actual damages. The legal presumption is that infant children are entitled to the benefit of the father's services, and that the wife is entitled to the benefit of the services and assistance of her husband, and that such services are of value to her and her children.' . . . When the party in whose interest the suit is brought sustained such relations to the deceased that he had the legal right to demand the services of the deceased, or to demand support and maintenance at the hands of the deceased, then substantial pecuniary damages will be presumed; while if recovery is sought by a collateral relative, or one having no such legal claim, and who was not in fact dependent upon the deceased, the presumption of substantial damages may not be indulged. . . . The complaint discloses that the deceased left a widow and minor children of tender years. There is a general allegation of damages, but no facts pleaded showing in what such damages consist. The wife and minor children were entitled by law to demand support and maintenance at the hands of the husband and father. When, by the wrongful act of the defendant, they are deprived of that husband and father, the law presumes pecuniary damages, and particular facts showing damages need not be pleaded." (8 ND pp. 34–35)

In Satterberg v. Minneapolis, St. P. & S. Ste. M. R. Co., 19 ND 38, 44, 121 NW 70, 72, this court said: "In the present state of civilization a moral obligation is almost universally recognized as resting upon individuals to support, or to contribute to the support of, dependent near relatives, and a dependent person who is actually receiving maintenance from a relative, or who has reasonable grounds to expect maintenance or assistance, suffers injury by his death. Of course, the extent of the injury must be determined by the trial court, and the recovery and apportionment based upon such determination. The humane and reasonable construction seems to us to be that the statute applies to heirs at law who are prevented by the death from receiving

pecuniary aid, support, or benefit which the deceased was either legally obligated to render, or which they were receiving, or had any reasonable expectation of receiving as a duty, or from a recognized sense of obligation."

Where there exists a reasonable probability of pecuniary advantage or benefit to one from the continuing life of another, arising from legal or family relations the untimely extinction of that life is a pecuniary injury. McKay v. Dredging Co., 92 Me 454, 43 A 29.

It was the duty of the deceased Umphrey to support his wife and minor children. NDRC 1943, 14–0703, 14–0908, 14–0910, 14–0708. They had a legal right to such support and according to the evidence Umphrey had furnished such support throughout the years and was furnishing such support at the time of his untimely death. The law will imply a pecuniary loss to the wife and children by the death of the husband and father who has been discharging his obligation to support them and was discharging it at and immediately prior to his death. The presumption is that the pecuniary loss suffered by them as a result of his death was a substantial one. 5 Sutherland on Damages, 4th ed., p. 4894; Dukeman v. The Cleveland, Cincinnati, Chicago and St. Louis Ry. Co., 237 Ill 104, 86 NE 712; 25 CJS Death, pp. 1284–1285.

Even though pecuniary loss to the wife or child is essential to the recovery of substantial damages for the death of the husband or father, this does not restrict the loss for which substantial damages may be recovered to the loss of money which might have been applied by the deceased to the benefit of the wife or child. It extends to the loss of everything which has a pecuniary value. 8 RCL, Death, Sec 107, p 831; Carter v. West Jersey and S. R. Co., 76 NJL 602, 71 A 253, 16 Ann Cas 929 and note; Hertz v. McDowell, 358 Mo 383, 214 SW2d 546.

"The law will imply a pecuniary loss in some amount to the wife and children by the death of the husband and father who was at the time employed and presumably receiving wages, and therefore able to discharge his obligation to support them. The presumption is in favor of substantial damages." 5 Sutherland on Damages, 4th ed, Sec 1267, p 4894.

"A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another. Where the relation of husband and wife, or of parent and minor child, exists, the law generally presumes a pecuniary loss to the survivor from the fact of death so that proof thereof is not required, unless he has in some way forfeited his claim." 25 CJS, Death, pp 1284–1285.

"In an action by a wife for the death of her husband, or by a child for the death of a parent, the jury in estimating the damages should consider what would be a reasonable support for the wife or child, according to the circumstances in life of the husband or parent as they existed at the death, and as they might be reasonably supposed to continue in the future, in view of the character, habits, occupation, and prospects in life of the deceased." 25 CJS, Death, Sec 102, p 1251.

In such action compensation may also be allowed for the then value of prospective services which the deceased probably would have rendered for the benefit of the person or persons for whose benefit the action was brought. 25 CJS, Death, p 1253.

"The number and the ages of children dependent upon a widow for support are proper subjects of proof in an action by her to recover for the death of her husband. Such evidence shows her loss. During the husband's life-time he was bound to support them; after his death that obligation, to the extent of her pecuniary ability, devolved upon their mother." 5 Sutherland on Damages, 4th ed, Sec 1265, p 4881.

"During minority children may ask compensation for such loss on the same principles, by the same measure and ascertained by proof of the same facts as a widow for the death of her husband. There is a legal right to support, and a like expectancy of benefit from the distribution of the parent's estate. The jury is not confined in estimating the damage to any exact mathematical calculation, but is vested with considerable discretion, with which the courts will not interfere unless it has been abused. The rights of minor children are not affected by what it may cost to raise or educate them, but are measured by the pecuniary benefit they could reasonably expect to receive from their father during the probable continuance of his life. The expense of

education during minority may be regarded as well as the value of support." 5 Sutherland on Damages, 4th ed, pp 4892–4894.

Among the matters that may be considered by the jury in an action for the benefit of the wife and minor children for the wrongful death of the husband and father are the characteristics and habits of the deceased, such as the age, health, condition in life, habits of industry and sobriety, mental and physical capacity, disposition to frugality, opportunities and customary earnings of the deceased and the use he made of them and his expectation of life. In addition, the age, circumstances, condition and relation of the party or parties for whose benefit the action was brought to the deceased may be considered. 5 Sutherland on Damages, 4th ed, Sec 1268, pp 4904–4907; 16 Am Jur, Death, Sec 214, pp 146–147; 25 CJS Death, Sec 127, pp 1295–1296.

In this case the wrongful act of the defendant resulted in the death of William F. Umphrey, who at the time was the sole support of his wife and six minor children for whose benefit this action is brought. The undisputed evidence shows that he was an industrious, temperate and trustworthy man, in good health, who had been, and who then was, supporting his wife and children, that he had been and was then making a home for them, furnishing them with the necessaries of life, and fulfilling in every respect his legal and moral duties as a husband and father. While pecuniary injury and loss to his wife and minor children are presumed from the fact of his untimely death through the fault of the defendant, this case does not rest merely upon presumption. The proof establishes to a certainty that the persons for whose benefit this action was brought sustained a very substantial pecuniary loss by the untimely death of the husband and father. The loss of support which the evidence shows that the deceased had been giving and was giving and in all reasonable probability would have continued to give is quite different from a loss for injured feelings. It is a substantial pecuniary loss. That the obligations placed upon the husband and father to his wife and minor children and the probable expenditure in performance thereof will be substantial are recognized by the laws of the United States, which at the time of the death of the decedent and at the time of the trial of this action allowed to the

husband and father an exemption of $600.00 for his wife and for each minor child as a dependent for the purpose of the computation of Federal income tax. The evidence here clearly shows that the parties for whose benefit this action was brought sustained a very substantial pecuniary loss by the death of the husband and father. The trial court was correct in denying the motion to dismiss, the motion for a directed verdict, and the motion for judgment notwithstanding the verdict.

Appellant next assigns error upon rulings of the court relating to the admission of evidence. The defendant was called for cross-examination under the statute as the first witness in the case. He testified that after the car driven by him collided with the car driven by the deceased the latter car went forward down into the ditch and that when it came to rest the wheels were up in the air. He also testified that he got out of his car right away and ran down to the car of the deceased and tried to help the people out. When asked what he did with reference to that he answered, "I noticed there was a little baby sitting on Mrs. Umphrey's lap. I laid the baby on the ground and tried to help Mrs. Umphrey out, which I couldn't do. She slid part way out, then I handed the baby back to Mrs. Umphrey." When asked what he did after that he answered, "I looked around to see if I could be of any assistance. It seemed I couldn't, so I went back to my car and stayed." He further testified that the highway patrolman came to the scene of the accident about half an hour to forty-five minutes after the accident and that an ambulance arrived shortly thereafter and that all the persons who had been riding in the Umphrey car were taken in the ambulance. All such testimony of the defendant was elicited and received without objection.

Some of the assignments of error are based upon objections to questions asked concerning matters which transpired, and statements made by the defendant, at the scene of the accident, immediately following the collision. The contention of defendant's counsel as indicated by the objections was that no testimony was admissible as to what transpired after the collision. The plaintiff testified that she and her husband with the six-month old baby sitting on her lap were riding in the front seat and that her

sister, about 18 years of age, was riding in the back seat with two of the children, that when she (plaintiff) got out of the car her sister and the children riding in the back seat were out of the car. Plaintiff was then asked if she paid any attention to her husband and she answered, "Yes, sir." She was then asked, "what did he do?" To this question defendant's counsel objected on the ground that it was incompetent, irrelevant, immaterial, "that this is a claim brought under the death statute. When death is proven there is nothing further to prove. We object to going into any details that happened at the car. Limit it to the death itself. This is a cause of action arising after death." Immediately following this objection and before a ruling was made, plaintiff's counsel stated, "that is not the purpose of this question. We have a right to show what happened at the scene of the accident." The court overruled the objection. The question was thereupon restated, "What did Mr. Umphrey do?" The plaintiff answered, "he was on the ground. He couldn't move." Error is assigned upon this ruling and other rulings that followed all relating to what transpired at the scene of the accident while the plaintiff, the defendant, and the deceased were there. We see no merit in the objections to this testimony. The questions related to circumstances attendant upon the main or principal fact and directly connected with the accident. Under the issues as framed by the pleadings the defendant placed in issue all the allegations of the complaint. He had further alleged that at the time and place of the alleged accident he was driving his automobile at the legal rate of speed on the right-hand side of the highway and operating the same in a careful and prudent manner but that at said time and place the deceased William F. Umphrey "was operating and driving a Ford automobile in an easterly direction on said highway and was operating said automobile at a speed of approximately fifty miles an hour and that as the automobile of this defendant approached the automobile driven by said William F. Umphrey, the said William F. Umphrey, without giving any signal of his intention so to do, suddenly checked the speed of his automobile on said highway to a stop or almost a stop." Obviously evidence was admissible to show what transpired immediately after the collision, the

condition of the deceased and what was done to care for him, matters directly attendant upon and resulting from the accident.

Error is also predicated upon the testimony of the plaintiff relating to certain statements that she testified were made by the defendant at the scene of the accident shortly after the collision. The plaintiff was asked by her attorney whether at that time and place she heard the defendant Deery make any statement concerning the accident. She answered, "Yes, I did." She was then asked to state what he said. She answered, "he said they ought to keep model A's off the road, and maybe he would have to buy a new car as a result of the accident." There was no objection to either of these questions but defendant's counsel moved to strike the answer to the last question on the ground that "it is purely an attempt to prejudice this jury by things that are not material." The trial court denied the motion. Later when the defendant testified as a witness in his own behalf he denied that he made any such statement. Leaving on one side all question whether the question propounded to the plaintiff was subject to objection, no objection was made. The motion to strike was not a matter of right but addressed to the discretion of the court. 64 CJ p 214; 1 Thompson on Trials, 2d ed, Sections 716, 718; 12 Ency of Evidence, p 170; Kolka v. Jones, 6 ND 461, 71 NW 558; Hogan v. Klabo, 13 ND 319, 100 NW 847; Tousley v. First National Bank, 155 Minn 162, 193 NW 38; Chace v. Lamphere, 148 NY 206, 42 NE 580; Combs v. Owens Motor Co., 121 Neb 5, 235 NW 682; Nikolich v. Slovenska Nardona Podporna Jednota, 33 NM 64, 260 P 849. There was no abuse of discretion and no error was committed in denying the motion to strike the answer.

Error is also assigned upon the denial of defendant's motion to strike an answer by plaintiff's sister, Betty McKenzie, to a question relating to the removal of the baby from the Umphrey car. As will be noted above the defendant Deery had already testified that he removed the child from the car. Betty McKenzie corroborates this but gave a somewhat different version of the incident. There was no objection to the question, but defendant's counsel made the following motion to strike the answer: "We move to strike the answer and move to strike anything that

happened after the death of Mr. Umphrey. Any other statements here are an attempt to prejudice this jury and are incompetent, irrelevant and immaterial. That is the sole purpose and it can't have anything to do with the damages in an action that is caused by death. It is not seriously disputed that he was killed in this automobile accident." Immediately following the motion the trial court stated: "The evidence shows he died two days later." Thereupon the court overruled the motion to strike. For the reasons already stated, there was no error in this ruling.

Error is also assigned upon the admission of testimony of the plaintiff relating to certain income of the deceased during the year 1948. She testified that the deceased performed all labor incident to the farming activities with the exception that he, employed some men to help to thresh the grain and that his son helped with the milking. She testified that he raised and produced the vegetables which the family consumed; that he butchered to provide meat, and that milk and butter for their own use were produced from their own cows. She further testified that during the year 1948 the deceased sold eggs, cream and certain cattle for which he received certain stated sums of money. She further testified that he raised all the feed for the livestock on the farm. She testified that she kept a record of the various items of income on a calendar sheet but that this became lost or destroyed while she was confined in the hospital. She testified further that she knew how much was received by the deceased for cream and for eggs and for the cattle that were sold. She enumerated the number of cattle, described them, and also gave the names of the purchasers and the prices which were paid. Defendant's counsel objected to this testimony on the ground that unless records were kept of the transactions and produced as evidence the testimony was purely speculative and not the best evidence. The objection was overruled and the plaintiff permitted to answer. We are aware of no rule which makes the testimony as to sales and proceeds received for the sale of property inadmissible because an entry thereof is not made in some record and such record produced. Of course, when, as in some of the cases relied upon by defendant's counsel, testimony is offered as to the net profits of a commercial business involving

numerous transactions and carried on with the services of persons other than the plaintiff and it is apparent that the testimony of the witness is, in fact, merely a guess, a situation may exist where the testimony fails to establish the pertinent facts, but that is not the situation here. The testimony here relates to relatively few transactions all carried on by the deceased and of which the plaintiff had first hand knowledge and of which, according to her undisputed testimony, she made record entries at the time but which records have subsequently been lost or destroyed. Under the facts as shown here, the court was justified in holding that the testimony was admissible. Laycock v. United Rys. Co. of St. Louis, 290 Mo 344, 235 SW 91. The weight and effect of the testimony was, of course, for the jury. The defendant argues, however, that the testimony was inadmissible under the rule that profits arising from capital invested in a business may not be taken into consideration in an action for damages for personal injuries or for wrongful death. In support of this contention defendant, among others, cites and relies upon the decisions of this court in Wilson v. O. H. Kjorlie Co., 73 ND 134, 12 NW2d 526, and Nagel v. Emch, 74 ND 631, 23 NW2d 879. The facts in the two cases cited readily distinguish them from this case. In Wilson v. O. H. Kjorlie Co., supra, the plaintiff was engaged in three different business activities in which he was assisted by his wife and by certain employees. Plaintiff's testimony was to the effect that he had received an average net income from his several business activities over a period of ten years prior to the accident of $2,000 to $3,000 per year and that as a result of the injury he sustained he was unable to perform his work as before and that his business activities produced no income and that this was proof that he had sustained a loss of at least $2,000 per year as a result of the accident. The court held that "the amount of income could not be shown without proper preliminary facts such as the character and magnitude of the business and capital employed, the employees hired and the quality and amount of services rendered by them as well as by the plaintiff himself," that the testimony in the case fell far short of meeting these requirements. In Nagel v. Emch, supra, the plaintiff sought to recover damages for personal injuries.

He was permitted to show the loss of income on his farm for the year 1944, the year in which the plaintiff was injured, compared with the income for previous years before the injury as evidencing the loss plaintiff had sustained because of his inability to perform certain services on the farm. The court pointed out that there was nothing other than the difference in the amount of income from the crops in 1944 and the amount of income in previous years to show the alleged loss, that no consideration was given to differences in weather conditions or to prices or to any other contingencies affecting the production and income from farming and held that the difference in the amount of the cash income from the 1944 crops and similar income from crops for previous years alone was speculative and contained no substantial foundation for measurement of value. In this case there was no attempt to compare income or amounts received from sale of farm produce or other income received by the deceased during 1948 with other years. The evidence was part of the proof introduced to show what the deceased had been doing and was doing up to the time of his death to support his family, to provide a home and subsistence and monies which he received as a result of his personal effort. Indeed, there was no objection to the evidence on the ground that it was sought to prove profit of business. The objection was alone on the ground that it was speculative because no books of account had been kept showing the transactions.

The testimony in question here did not relate to profits of, or income resulting largely from, services performed by others than the deceased and from capital investment. The farm produce in question resulted in main from the personal efforts and labor of the decedent. The element of his personal effort and labor predominated largely in the production of the cattle and other products of the farm that were used for the subsistence of the family and the excess of which was sold and converted into money. The evidence was not offered for the purpose of proving possible or probable future profits of the farming activity in which the deceased had been and was engaged. The activity was not one involving speculative profits

resulting in large part from capital investment and from services rendered by others. It did not involve profits at all but involved income resulting principally from the labor and efforts of the deceased. Lund v. Tyler, 115 Ia 236, 88 NW 333; Jordan v. Cedar Rapids & M. C. Ry. Co., 124 Ia 177, 99 NW 693; Rosenthal v. Harker, 56 Utah 113, 189 P. 666; Yenney v. Pacific Northwest Traction Co., 124 Wash 669, 215 P 38; 16 Am Jur, Death, Sec. 212, p 145; 25 CJS p 1293. The plaintiff might show the character and habits of the deceased, his habits of industry, his mental and physical capacity, his disposition to frugality, his earning capacity and what he had been doing and was doing to provide for his family. 5 Sutherland on Damages, 4th ed, Sec 1268. The evidence as to the acquisition of the farm, the use to which he put the farm, the products raised principally through the personal efforts and labor of the deceased, and the income or earnings resulting therefrom clearly had a tendency to show the habits of the deceased, his mental and physical capacity, his earning capacity and the use that he made of available opportunities to provide for his family. 16 Am Jur, Sec 212, pp 144–145; 25 CJS Death, p 1293; 5 Sutherland on Damages, 4th ed, p 4909; Kronold v. City of New York, 186 NY 40, 78 NE 572; Heer v. Warren-Scharf Asphalt Paving Co., 118 Wis 57, 94 NW 789; Alitz v. Minneapolis & St. L. R. Co., 196 Ia 437, 193 NW 423. See, also, Louisville E. & St. L. R. Co. v. Clarke, 152 US 230, 242, 38 L ed 422, 425.

The court charged the jury: "that where a person who is running an established business dependent on his own exertions is disabled by another's negligence, the character and size of the business may be shown, the capital and labor employed, and the quality and amount of his own services therein, as well as the profits of the business, not for the purpose of recovering the profits, but simply to throw light on the quality and value of the earning capacity of the decedent." The court further charged: "The statute contemplates only pecuniary loss or damage. Damages on account of loss of society, and companionship cannot be recovered, and damages for sentimental benefits and injured feelings of the beneficiaries, plaintiff and her children,

cannot be recovered. Neither can damages for pain or suffering of decedent be recovered." By these instructions the court limited the application of the evidence and precluded the jury from considering elements of damages outside of the evidence. There was no error in the admission of the evidence in question.

Error is also assigned upon the instructions to the jury. The instructions were in writing. There was no request for further instruction. No good purpose would be subserved by setting forth, or commenting at length upon, the instructions that are challenged. We have carefully considered all instructions given to the jury and are agreed that there is no merit in the contention any error prejudicial to the defendant was made by the court in instructing the jury. The defendant contends, however, that the court erred in failing to instruct that in fixing the amount of recovery the jury must limit the amount in respect to loss of future benefits to the then present cash value of future benefits of which the beneficiaries were deprived by the death of the deceased.

It is true that no such instruction was given but the instructions given did not "inhibit or negative computation of damages on the basis of present worth," in respect to the loss of such future benefits, and it has been said that in such case the court "cannot assume that the jury did not, in fact, so reach its determination." Ingebretsen v. Minneapolis, St. L. R. Co., 176 Ia 74, 155 NW 327. The trial court instructed the jury that the laws of this state provide that "the jury shall give such damages as it finds proportionate to the injury resulting from the death to the persons entitled to the recovery." The court further charged that for the breach of an obligation not arising from contract, the measure of damages, except when otherwise provided by law, is the amount which will compensate for all the detriment caused thereby whether it could have been anticipated or not. As has been said the defendant did not request any additional instruction. Neither did the defendant include as one of the grounds in the motion for a new trial the failure of the court to instruct the jury that it must limit the amount of recovery to the present cash value of future benefits of which the beneficiaries were deprived by the death of the deceased.

Indeed, the contention that the trial court erred in not giving such instruction was not presented to the trial court at all and is raised for the first time on this appeal. In these circumstances the defendant is in no position to predicate error upon the failure of the court to give the instruction contended for.

It is the settled law in this state that "in the absence of a request for an appropriate instruction, the failure of the trial court to instruct the jury does not constitute prejudicial error. In such case failure to instruct can be urged as error only if in light of the evidence the nondirection constitutes misdirection." State v. Van Horne, 71 ND 455, 2 NW2d 1; Huber v. Zeiszler, 37 ND 556, 164 NW 131; Harmon v. Haas, 61 ND 772, 241 NW 70; Farmers Exch. v. Iverson, 51 ND 909, 201 NW 509; Reichert v. N. P. Ry. Co., 39 ND 114, 121, 167 NW 127, 128; Blackstead v. Kent, 63 ND 246, 247 NW 607; Andrieux v. Kaeding, 47 ND 17, 28, 181 NW 59, 63; Grant v. Jacobs, 76 ND 1, 32 NW2d 881; Froh v. Hein, 76 ND 701, 39 NW2d 11. See also Anno 77 ALR at p 1459 et seq.; Anno 154 ALR at p 805 et seq.

The laws of this state provide that the party desiring to move for a new trial shall serve with the notice of such motion a statement of the errors of law of which he complains. NDRC 1943, 28-1809. In this case the defendant served with the notice of his motion a statement or specifications of the errors of law of which he complains. However, in such statement he did not specify the failure of the court to instruct the jury that in determining the amount of damages for the loss of future benefits it must limit the same to the then present cash value of such benefits. It is well settled law that where there is a motion for a new trial rulings of the trial court which constitute proper grounds for a new trial must be so assigned and presented otherwise they will be deemed waived, and that any alleged errors of law occurring at the trial not embodied in the motion for a new trial are deemed waived and upon appeal the moving party is limited to review of the grounds of the motion as presented to the district court. Jensen v. Clausen, 34 ND 637, 159 NW 30; Zimbelman v. Lah, 61 ND 65, 237 NW 207; O'Dell v. Hiney, 49 ND 160, 190 NW 774; Kaufman Jewelry Co. v. Torgerson, 57

ND 321, 221 NW 881; Isensee Motors v. Godfrey, 61 ND 435, 238 NW 550. See also 29 Cyc 924; 46 CJ 317; 66 CJS 374–375.

As said, the alleged error on the part of the trial court in failing to specifically instruct the jury that it must limit the amount of recovery to the present cash value of the future benefits of which the beneficiaries were deprived was at no time presented to or considered by the trial court and it is sought to raise such question for the first time on appeal. The rule supported by the authorities generally and by the decisions of this court are to the effect that such question may not be raised for the first time on appeal. Maher v. Ramsey Co., 75 ND 760, 32 NW2d 679; Bormann v. Beckman, 73 ND 720, 19 NW2d 455; Grant v. Jacobs, supra. See also 4 CJS p 430, Sec 228; 3 Am Jur, Appeal and Error, Sec 246 et seq., p 25.

The defendant next contends that the verdict is excessive. The statute (NDRC 1943, 28–1902) provides that a verdict "may be vacated and a new trial granted on the application of the party aggrieved for . . . excessive damages appearing to have been given under the influence of passion or prejudice, but when a new trial is asked for on this ground and it appears that the passion and prejudice affected only the amount of damages allowed and did not influence the findings of the jury on other issues in the case, the trial court, on hearing the motion, and the supreme court, on appeal, shall have power to order a reduction of the verdict in lieu of a new trial, or to order that a new trial be had unless the party in whose favor the verdict was given remits the excess of damages." In actions for damages for wrongful death the jury is vested with a large discretion in fixing the amount of damages (25 CJS, Death, Sec 115, p 1265; 5 Sutherland on Damages, 4th ed, pp 4892–4894) and while the discretion of the jury in such cases is subject to the supervision of the court, a verdict may be interfered with on the ground of excess only where it is manifest that the amount awarded is not within the evidence and was influenced by passion or prejudice. NDRC 1943, 28–1902; Whaley et al. v. Vidal et al., 27 SD 642, 132 NW 248; Whaley et al. v. Vidal et al., 27 SD 627, 132 NW 242; 25 CJS pp 1266–1267.

▄▄▄▄▄▄▄▄▄▄▄▄▄▄

"In order to justify the granting of a new trial on the ground that the amount of the verdict is excessive, the fact that the award is excessive must be plain or evident. It is not sufficient for the party seeking a new trial merely to raise a doubt as to whether the damages are too large, he must show affirmatively and satisfactorily that they are so and to what extent. The amount, so it is said, must appear to be unreasonable or outrageous, or such as to manifest, on the part of the jury, mistake, misapprehension of duty, or misconduct, indicating that they were influenced by passion or prejudice." 39 Am Jur, Sec 144, p 150.

"Whether a verdict is so large as to indicate passion and prejudice warranting a new trial must be determined largely by the particular facts in the case. While the fact that the award is immoderate and excessive is a circumstance to be considered, such fact does not necessarily indicate that the verdict was the result of mistake, passion, prejudice, or other misconduct on the part of the jury and does not warrant the granting of a new trial on the ground of passion or prejudice if there was sufficient evidence before the jury to justify the verdict rendered. Mere excessiveness of an award is distinguished from such excessiveness as indicates bias or prejudice, in that the former may be but an honest mistake of the jury, while the latter savors of misbehavior on the part of the jury." 66 CJS p 245.

The trial court denied the motion for judgment notwithstanding the verdict and the motion for a new trial. He found that the verdict was not tainted with passion or prejudice. We agree with the district court. Here the husband and father, who had been and was the sole support of the wife and six minor children came to an untimely death through the wrongful act of the defendant. Obviously the plaintiff and the surviving wife and minor children of the deceased sustained a very substantial pecuniary loss. When all pertinent facts in the case relating to the pecuniary loss sustained by the persons for whose benefit the action was brought and the present purchasing power of money (25 CJS Death, p 1267, Sec 115; Bowes v. Public Service Ry. Co., 94 NJL 378, 110 A 699; Luther v. Dornack, 179 Minn 528,

229 NW 784) are considered it cannot be said that the verdict is so large as to indicate passion and prejudice.

The judgment and the order appealed from are affirmed.

MORRIS, C.J., and GRIMSON and BURKE, JJ., concur.

SATHRE, J., did not participate.