STAIB, Administratrix, Appellant, v. TARBELL, Respondent.

(273 N. W. 652)

(File No. 8001. Opinion filed June 1, 1937)

*C. R. Jorgenson,* of Watertown, for Appellant.

*Hanten, Hanten & Henrikson,* of Watertown, for Respondent.

POLLEY, J. The plaintiff in this action is the widow of Jacob Staib, and the administratrix of his estate. The action is brought to recover damages for his death, claimed to have been caused by being struck and run over by the defendant's automobile on the evening of the 4th of February, 1935. Defendant was prosecuted criminally for causing the death of Staib (State v. Tarbell, 64 S. D. 330, 266 N. W. 677), and the facts of this case are the same as those involved in the criminal case.

Plaintiff's right of recovery in this case is based upon the alleged negligence of defendant in the manner in which he was driving his car at the time of the accident, which took place on Fifth Street S.E. in the city of Watertown, and at about midway between Fourth and Fifth avenues.

At and for several years prior to his death Staib had been employed by the city of Watertown, looking after the city sewers and doing repair work thereon. On the afternoon and evening of his death Staib and a man by the name of Jack Frost were engaged in the making of repairs in and about a certain manhole a few inches east of the center line of Fifth street about midway between Fourth and Fifth avenues. Frost testified that he and Staib went to this manhole about 4 o'clock in the afternoon; a Mr. Schultz appears to have been with them, and they had a pick, three shovels, a pail, and a steel gas tank with torch and rubber hose attached. They removed the manhole cover and placed it on the pavement a few feet to the south of the manhole. Schultz does not appear to have remained there very long, and at about five minutes before six o'clock Frost left and went to the city warehouse to get a lantern. The evidence does not show just how long he was gone, but while he was gone Staib was killed.

Fifth street, at the place where the accident occurred, was an arterial highway; and in addition thereto federal highway No. 81 extending north and south entirely across the state, and, at the time of the accident, federal highway No. 212, extending east and west across the state, were routed along Fifth street at this particular place; so that, in addition to the city traffic (which was very

heavy) passing along this street, it was also burdened with the throughtown traffic from four different directions. The street is 80 feet wide with a strip of concrete pavement 20 feet wide along the center line thereof, and a strip of dirt or gravel 10 feet in width on each side of the paving. It is conceded by the record that notwithstanding the excessive traffic on this particular street that neither of the above-named parties, who spent some two hours working in and around said manhole, put up any barriers to prevent auto drivers from driving their cars into the opening in the street, nor put up any danger signals for their own protection.

Defendant is a long time resident of Watertown and at, and for several years prior to, the 4th day of February 1935, had been engaged in the drug business in that city in company with Mr. C. B. Williams.

The accident that caused Staib's death occurred very shortly after 6 o'clock in the evening, but, nothwithstanding the great amount of traffic on said street at that time, it is conceded that no person actually witnessed the occurrence of the accident; therefore the fact that Staib's death was caused by the defendant's car must be shown, if shown at all, by circumstantial evidence. But the mere fact if it be a fact, that Staib's death was caused by defendant's car, is not sufficient to entitle plaintiff to recover. It must be further shown that defendant was guilty of negligence in some manner, and this fact also must be established by circumstantial evidence. The defendant for his defense denied that he caused the death of Staib, or that he was negligent in the management of his car, and alleged contributory negligence on the part of Staib. Plaintiff has the burden of proving the first two facts, while defendant has the burden of proving the third.

The case was tried to a jury. Defendant, at the close of plaintiff's evidence, and again at the close of all the evidence moved for a directed verdict. These motions were denied and the case went to the jury. A verdict for plaintiff was returned and defendant moved for judgment n. o. v. This motion was granted and judgment was entered dismissing the cause on the merits. From this judgment plaintiff appeals.

The testimony shows that at and for some time prior to February 4, 1935, defendant was the owner of, and was using, a Ply-

mouth sedan car with a dark blue body and yellow wire wheels; that about noon on the day of the accident he left this car at the Hanson Garage, which is on Third street, for some needed repairs. the car remained at said garage until about 15 minutes to 6 o'clock. At that time defendant took the car from said garage and went south on Third street to Sixth avenue and east to the home of a Mr. Schwartz which is on Seventh street, then west a block to Fifth street, then drove north along Fifth street to Kemp avenue, then west along Kemp avenue to its intersection with Broadway, and there parked the car in front of his drugstore, then turned his lights off, entered the store, and proceeded with his ordinary duties therein until about 8 o'clock. All the time he was making the above drive his headlights were lighted, "on dim." The lights in the store were lighted and shining through the windows on the car. The distance along Fifth street from Seventh avenue to Kemp avenue is seven blocks, and from Fifth street along Kemp avenue to its intersection with Broadway where he parked the car is five blocks. It was while defendant was making this drive north on Fifth street, if at all, that his car struck Staib.

Upon the question of the conduct of the defendant and the decedent just prior to the accident a witness, Skow by name, testified that he came into town from the east driving a truck on highway No. 212 and reached the intersection with Fifth street at about 10 minutes after 6 o'clock. His lights were turned on "in dim," and he was driving about 18 to 20 miles per hour. That as he went north on Fifth street he saw Staib at the manhole in the center of the pavement; could see Staib for half a block or possibly more, and saw the tank. That he saw Staib from the time he reached the intersection half a block south of the manhole. That Staib was on the north side of the manhole facing south. That the manhole cover was a little to the south of the manhole and that the gas tank was southeast of the manhole. Staib was working with the torch, and as witness reached the manhole he swung his truck out to the east to avoid hitting Staib. Skow said it was getting dark, and his first impression was that the object in the street was a large dog but when he got close to it he saw it was a man; that he saw no lantern, no barricade, no flag, and no obstruction of any kind in the street; that Staib was stooping over or kneeling down on

one knee. The torch was in the manhole below the surface of the street, and as he passed Staib he saw the light from the torch shine up in Staib's face. As the witness passed Staib, he saw in his mirror the lights of a car coming from the south about at the intersection of 4th Avenue and Fifth street. This was a half a block south of the manhole where Staib was working. He said the driver's seat in his truck was higher—probably two feet higher than the seat in an ordinary car and that he could see the street to about 16 feet of the front of the truck. Paid no further attention to the lights of the car coming from the south.

Millard Barkley testified that he was riding in the truck with Skow. Said that as they approached Staib he could see an object in the street at a distance of 150 feet, and "when I got within 50 feet of it, I knew it was a man. Discovered it was Mr. Staib just before we passed him, I believe. You could get through there where Staib was working if you went off the paving. I think you could pass him on the paving." "Staib was stooped down kneeling on one knee with body bent over with his head down." He further testified that he "saw no lantern, no flag, flare, or barricade"; that at 150 feet he saw something in the road; that it could have been a box or something that dropped off a truck. At that particular time it was hard to see without lights, and lights didn't do much good, so that objects at any distance were quite dim.

Richard Wagner testified that on the evening of February 4. 1935, he drove a truck into Watertown from Gary; that he drove up Fifth Street past the manhole where Staib was working at just about 8 minutes after 6 o'clock; that he had his lights on and was driving between 20 and 25 miles per hour; that when within about 20 feet from the manhole in Fifth Street he noticed an object at the manhole but couldn't tell what it was until he was close to it, he saw it was a man; he was bending over the manhole working on the manhole, on the outside of the manhole; couldn't see any light there at that time; man was stooping on the east side of the manhole facing west; "I couldn't see his face." "All I could see was his back and he looked like he had his hands in the manhole; was facing northwest his back to us; we couldn't see his hands. It looked as though his hands were in the manhole working in there.

I can't say for sure; like he was down on one knee and the other sticking up; like his chin was on his chest; his head would be two feet or so from the pavement; I turned to the right with two wheels off the pavement and went around him; had to swerve shortly; did not see this torch-can at that time; did not see any tools; saw no lights or barricades of any kind; yes, I could see the manhole; came west on 212 and turned north on 5th street; there was someone with me; don't remember conversation, imagine we were talking; could have been more than 20 feet from object when we saw it; that is just my estimate; at the rate we were driving we had no trouble going around it; it was smooth and plenty of room on the east side of the manhole; no inconvenience to turn out; saw the object a few seconds before I saw it was a man." Oscar Olson was with Wagner and corroborated his testimony.

The foregoing testimony was corroborated by a considerable number of witnesses, and there is no doubt whatever that from the time Jack Frost started after the lanterns up to the very minute of his death Staib was at work alone in and around the manhole. He had no barriers or signals of any kind to warn auto drivers of his presence. Some of the time he was stooped over the edge of the manhole. Some of the time he was down on his knees or on one knee. He was facing northwest, while defendant's car approached the manhole from the south on the east side of the street. One witness said he had his head down in the manhole. He appeared to be utterly oblivious to the continuous passing of cars and the danger to which he was exposed. Jack Frost testified that when he went after the lantern he felt concerned about Staib's safety. He testified: "I went away leaving Jake at that same manhole working with the blow torch in the hole. When I left I told him to stand up straight because it would throw a longer flame and also he could be seen more clearly. He stood up straight the last time I seen him. I drove around the block and looked at him. I was concerned about him to come back and look to see if everything was all right at that time. That is what I came back for. It wasn't dark when I left Mr. Staib at the manhole to come up town. My purpose was to get a lantern. No one was boss. Both were equal and were bossing the job, working together. Jake did as much as I did. Mr. Schultz was the Assistant City Engineer."

When Frost returned with the lantern, Staib was dead. His body was lying face down, near the middle of the street about 60 feet north of the manhole. The can with the hose attached was about 15 feet north of the manhole, and scattered along the street from the manhole to the can were fragments of a broken headlight lens, the pattern in the glass of which corresponded with the lens in the headlights on defendant's car.

There was some dispute in the testimony as to the condition of the weather at the time of the accident. All of the witnesses seem to agree that it had been a bright warm day and that the snow and ice were melting some. Some of them said the evening was dark and misty and foggy. Some of them said it was clear and others said it was dark. But it is a fact that all the car and truck drivers had their headlights turned on, and the court will take notice that at 6 to 6:15 o'clock on the evening of February 4th darkness is rapidly approaching. It was at the time of day when there is not enough daylight to enable a car driver to clearly distinguish objects in the road, and headlights afford the least assistance. It was at the time when visibility is the very poorest of the entire twenty-four hours.

Clinton Wilson, a witness for plaintiff, testified that at about 6 o'clock on that evening he was on Fourth avenue driving east; that at the intersection of Fourth avenue and Fifth street there was a stop sign and that he stopped his car; that as he stopped his car he looked south on Fifth street and saw a car coming from the south; that he waited for that car to pass; that immediately after he stopped his car at the intersection (this was half a block north of the manhole) he heard a noise to the south of him; not a very loud noise but it "might have been glass breaking or something falling out of a truck." He did not pay much attention; "there was nothing about the sound that attracted my attention; the car that passed was a blue car with yellow wheels; that the car was traveling right around 20 miles per hour and did not increase its speed as far as he saw it; did not see who was driving it; there was no other car or truck in sight"; after the car passed he saw a smoke in the street to the south of him and turned his car south into Fifth street; that as he turned south he saw an object in the street that at first looked like it might be a rug or a blanket or a

piece of tar paper, but when he came within 30 to 40 feet of this object he discovered it was the body of a man; it was dusk and kind of hard to see; "it was the worst time of the night to see." He saw something that looked like a tank but did not know what it was; it was the smoke that attracted his attention. The torch flame had been extinguished but the torch was still smoking. "It was around 100 feet from where I turned south to where the body lay." He then drove south to the next intersection, then west a block, and on around the block to the intersection of Fourth avenue and Fifth street again, then drove north to Kemp avenue and to the police station and reported what he had seen.

Ralph Givens testified that just after 6 o'clock on the evening of the accident he crossed Fifth street going east on Fifth avenue (this is a half block south of manhole); just as he reached the intersection at Fifth street a car came into Fifth street on Sixth avenue and turned north—Givens crossed Fifth Street ahead of this car. He said this was a blue car with yellow wheels with two men in the front seat; did not know who they were, but that he knew the car and it was defendant's car; that it was traveling 20 to 30 miles per hour; that as he was crossing the street he noticed a man working at the manhole in the street ahead of the car and about 150 or 200 feet north of the street crossing where witness was standing. Just after the car passed witness heard a noise—sounded like two cars hitting or a collision of some kind but saw no car coming from the north—saw no car but the Tarbell car. The noise came from the north and sounded like the end gate falling out of a truck. Witness made no effort to ascertain the cause of the noise. This noise that sounded like a collision of some kind or something falling off a truck was heard by a number of people within a radius of half a block or more and they all described it about the same.

After Mr. Staib's death was reported to the police, immediate search was made to find the person and the car that were responsible. About 8 o'clock two members of the police force, and a little later the county sheriff, came to defendant's store and questioned him at length as to where he had been with his car during the evening. Defendant frankly answered the questions put to him by the officers without hesitation or evasion. An examination of his

car showed that the lens of his left headlight was broken and gone, and that there was a dent in the front end of his left front fender. This is the side of the car that was next to the manhole as he drove up Fifth street. When the matter was called to defendant's attention, he said he recalled running over something while he was driving up Fifth street—that it sounded to him like breaking a light globe or something like that, but that he paid no attention to it and did not remember just where it was; and after some discussion defendant freely admitted that it may [plaintiff claims he said it must] have been his car that struck Mr. Staib but that he had no knowledge of striking him.

■■ It is the contention of the plaintiff that the car that crossed the intersection at Fifth avenue just behind the witness Givens, and that crossed the intersection at Fourth avenue just in front of the witness Wilson was the Tarbell car, and that it was the car that struck and killed Mr. Staib. But who killed Staib is not the question we must determine; for Tarbell's car may have killed Staib and still Tarbell would not be liable unless he was guilty of negligence at the time of the accident; neither would he be liable if Staib was guilty of contributory negligence. It is not claimed that defendant did not have a perfect right to drive his car along Fifth street, nor that he was driving at an excessive or unlawful rate of speed, nor that he did not stay on his own side of the street. But plaintiff contends that defendant could have seen Staib if he had been "looking." Of course, had he been looking for Staib at the manhole he undoubtedly could have seen him and very probably could have avoided striking him with his car; but defendant did not know there was a manhole there nor that Staib was by the manhole, and he was not guilty of negligence in not seeing him. On the other hand, we believe that Staib was guilty of contributory negligence in putitng himself in a place of danger, as above described by the witness, without keeping any kind of a lookout, or taking any precautions for his own safety. He had a right, of course, to work at the manhole, but it was incumbent upon him to erect barriers or put out danger signals so that auto drivers might be warned of his presence.

The principles of law involved in this case are very similar to those in Culhane v. Waterhouse, 51 S. D. 584, 215 N. W. 885,

and Descombaz v. Klock, 58 S. D. 173, 235 N. W. 502, 504, on rehearing 59 S. D. 461, 240 N. W. 495. In both those cases the plaintiff was injured by an oncoming automobile. In the Culhane Case the plaintiff stood in the ditch beside the road and watched the headlights of the approaching car for a distance of 1,000 feet, but, instead of stepping aside to avoid being struck, she stood still until the car struck and injured her. We held that in failing to make any effort to save herself after she saw the defendant's car approaching she was guilty of contributory negligence and not entitled to recover.

In the Descombaz Case plaintiff was injured by an oncoming car. The headlights of the car were lighted and, had decedent looked, he would have seen that if he did not step aside the car would probably strike him. By stepping aside he would have avoided injury. In that case we said: "It is plain that if respondent had stepped out of the front to the right side of his car his person would not have been injured. It being apparent that a proper lookout followed by prudent behavior when the lookout disclosed danger would have avoided the injury, there can be no facts for the jury to find, and we must hold that respondent was guilty of contributory negligence as a matter of law. [Citing Culhane v. Waterhouse, supra.] If he saw and failed to act prudently, he was negligent. If he failed to look, he was negligent in not looking."

In this case, assuming that it was defendant's car that struck Staib, there is no evidence that defendant was guilty of actionable negligence and defendant's motion for a directed verdict should have been granted. On the other hand, we find that decedent was guilty of contributory negligence as a matter of law and there was no error in setting aside the verdict and entering judgment n. o. v.

The judgment and order appealed from are affirmed.

RUDOLPH, P. J., and ROBERTS and SMITH, JJ., concur.

WARREN, J., concurs in result.