HENRIETTA HOELMER v. FRANK E. SUTTON.[1]

February 9, 1940.

No. 32,305.

*H. A. Edman* and *C. E. Warner,* for appellant.

*Putnam & Carlson,* for respondent.

[1]Reported in 290 N. W. 225.

LORING, JUSTICE.

In an action for damages for death by wrongful act arising out of a collision between a car and a pedestrian the trial court directed a verdict for defendant. The case is before us on appeal from an order denying plaintiff's motion for a new trial.

The essential facts are in little dispute. Plaintiff is the widow of Herman Hoelmer, deceased. Hoelmer, at the time of the accident causing his death, was employed by the Western Asphalt Paving Corporation, which was then engaged in paving a part of highway No. 16 between Fairmont and Blue Earth. His work consisted in setting out flares every evening or late afternoon on the highway at obstructed places and taking them in each morning and cleaning, trimming, and refilling them for evening use. The paving of highway No. 16, running east and west, had at the time of the accident been completed from Fairmont east to the so-called Imogene road, a gravel road running north and south and intersecting No. 16 at right angles. All that remained to be done was the making of concrete flumes or spillways to drain water from the pavement across the shoulders. On the evening of October 29, 1935, excavation for such flumes had been made on the shoulders of No. 16, two about 200 feet west of the Imogene corner, one on each side of the road, and two more about 300 feet still farther west. There were small mounds of dirt at each of these places on the shoulders. Between 5:30 and 6:00 p. m. Hoelmer began setting flares to warn traffic of the presence of these mounds. Hoelmer set flares at the two more easterly flumes. He drove his car west on No. 16 and parked it on the shoulder facing west on the north side of the road and just west of the second pair of flumes. He set a flare by the heap of earth on the north side. While doing so he was behind his car and concealed from approaching eastbound traffic. He then started across the pavement to set the flare for the mound of earth on the south shoulder. When he was about half way across the south lane carrying the lighted flare, he was struck by defendant's car, a model T Ford, and received injuries from which he died.

The defendant's lights were on, but he testified that he did not see Hoelmer until he was within four feet of him and did not realize that he had struck a man. No. 16 was open for traffic as far east as the Imogene road and was being used by many motorists at the time. The Imogene road had not been ' undergoing any improvements and was of course in general use. There was a barricade on No. 16 near the east edge of the Imogene intersection. There is evidence that there had been a similar barricade on No. 16 about two miles west of this place of intersection. There was, however, no evidence that on the day of the accident there was such a barricade there. There is direct testimony that there was not. August and John Krage, brothers, were employed on this construction job. They had quit work at about 5:30 p. m. and had gone to Imogene, less than a mile distant, to the company plant in search of Hoelmer. When they returned Hoelmer was behind his car getting the flares ready for the more westerly flumes. The Krage boys stopped their car by the easterly flumes, because August, who was a foreman on the job, wanted to reset the flares already set there by Hoelmer. While August was so occupied, John proceeded to walk west toward Hoelmer, some 250 to 300 feet away. At about 100 feet from Hoelmer, he saw defendant's car approaching from the west with its lights on. He saw Hoelmer start across the road and saw him run down in about the middle of the south lane. He estimated defendant's speed at approximately 25 to 30 miles an hour. Defendant testified that he was traveling between 15 and 18 miles. Witnesses Benton and France, who were traveling in Benton's car behind defendant, sustain defendant's estimate of his speed.

The trial court in directing a verdict for defendant specifically held that plaintiff was barred from recovery because decedent was contributorily negligent as a matter of law. The plaintiff earnestly contends that this was error and stresses the fact that decedent was a workman and that signs to the west warned motorists that construction work was in progress. She also contends that decedent may have looked and may have misjudged the

distance and speed of defendant's approach. However, this is not the ordinary case of a workman preoccupied with work in the lane of traffic. Here the decedent had nothing to do on the pavement itself except to walk across it when going from one shoulder to the other. The pavement was open to traffic, and cars were passing while he was engaged in putting out the flares. One had passed going west just before he attempted to cross. It was after normal working hours for other members of the crew. There was no one to warn him nor was there anyone stationed there to control the traffic. He had to rely on his own vigilance for protection against the known danger of approaching cars. Under the conditions existing at the time, the pavement was a place of danger for a pedestrian, and in our opinion no person of ordinary prudence would have undertaken to walk across it as the decedent did when defendant's car was so near that a look in that direction must have disclosed that there was no time to pass in front of it. So near was it that there was no room for misjudging its distance or speed. Plaintiff's own witness, though a hundred feet farther from defendant's car than was the decedent, saw it coming and estimated its speed. We are convinced that no reasonable minds, functioning judicially, could acquit the decedent of lack of care commensurate with the circumstances. Quinn v. Boston Elev. Ry. Co. 188 Mass. 473, 74 N. E. 687; Carney v. Boston Elev. Ry. Co. 219 Mass. 552, 107 N. E. 411; Loyle v. Boston Elev. Ry. Co. 260 Mass. 404, 157 N. E. 356. The numerous cases cited by plaintiff contain broad statements in generalization of the care required of pedestrians and of workmen upon the public highways, but all of them are distinguishable upon the facts. The whole matter simmers down to what is commensurate care under the circumstances. We find it wholly lacking on decedent's part as a matter of law. Here there was no room to invoke a presumption of due care. It was displaced by the direct evidence. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557.

Order affirmed.

144

GALLAGHER, CHIEF JUSTICE (dissenting).

Under the doctrine of such cases as Tobisch v. Villaume, 164 Minn. 126, 204 N. W. 568; Quinn v. Heidman, 157 Minn. 129, 195 N. W. 774; Lundberg v. Zimmer, 159 Minn. 179, 198 N. W. 407; Pach v. Chippewa Springs Corp. 161 Minn. 125, 201 N. W. 293, it seems to me that the issues of defendant's negligence and decedent's contributory negligence were for the jury. There is testimony in the record from which a jury could find that defendant was traveling between 25 and 30 miles per hour at the time of the accident. In that event, his automobile must have been from 50 to 60 feet from the place of the accident when decedent came out from behind his car and started across the highway carrying in his hand a lighted flare. Defendant admits that he did not see decedent until he was about four feet from him. Whether under those circumstances and others appearing in the record defendant should have seen decedent and made some effort to avoid running into him was a fact question for the jury, as was the question of decedent's contributory negligence in attempting to cross the highway under the circumstances existing at the time. Decedent had a right to assume that automobiles would be driven along the place in question with care commensurate with the circumstances. Peterson v. Minneapolis St. Ry. Co. 202 Minn. 630, 279 N. W. 588; 5 Am. Jur., Automobiles, § 444.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Chief Justice Gallagher.