Inga B. QUAM, for the use and benefit of herself and Ellen C. Quam, Corrine Quam, Burton Quam and Neil Quam, and as Trustee for the Workmen's Compensation Bureau of the State of North Dakota, Plaintiff and Respondent,

v.

Norman WENGERT, Defendant and Appellant.

No. 7650.

Supreme Court of North Dakota.

Dec. 14, 1957.

1943, as amended by Chapter 355, Section 1, 1949 NDSL, and against the defendant, Norman Wengert. It is claimed in the complaint that the plaintiff's husband, Clarence J. Quam, died as the result of injuries received by him on March 30, 1953, when an automobile, negligently driven by the defendant, hit said decedent, Clarence J. Quam, knocked him down and inflicted serious injuries upon him from which he died. The defendant admits the accident, denies negligence on his part and alleges that the negligence of the decedent, Clarence J. Quam, contributed to the injuries so that the plaintiff was not entitled to recover.

The case was tried to a jury. Motion for a directed verdict for the defendant was made and denied. The jury found for the plaintiff and assessed the damages in the sum of $45,967.69. Judgment was entered. Thereafter defendant made a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. That motion was denied. The defendant appeals from the order denying that motion and specifies that the evidence is insufficient to sustain the verdict; that the court erred in the instructions to the jury, and that in any event the damages are excessive.

The first question to consider is whether there is sufficient evidence to establish a case of actionable negligence against the defendant and whether there was contributory negligence on the part of Mr. Quam, the plaintiff's deceased husband. Questions of negligence and contributory negligence are ordinarily questions of fact for the jury. They are questions for the jury where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence. Only when reasonable men can draw but one conclusion from the evidence do they become questions of law. On motion for judgment notwithstanding the verdict the evidence is considered in the light most favorable to the verdict. McCullagh v.

Burnett, Bergesen, Whittlesey, Shermoen & Pancratz, Fargo, for respondent.

Nilles, Oehlert & Nilles, Fargo, for appellant.

GRIMSON, Chief Justice.

This is an action for damages brought by the plaintiff for the benefit of herself and her minor children, and as trustee for the Workmen's Compensation Bureau of North Dakota, pursuant to Section 65–0109, NDRC

Fortune, 76 N.D. 669, 38 N.W.2d 771; Dahl v. North American Creameries, Inc., N.D., 61 N.W.2d 916; Moe v. Kettwig, N.D., 68 N.W.2d 853; Killmer v. Duchscherer, N.D., 72 N.W.2d 650; Geier v. Tjaden, N.D., 74 N.W.2d 361.

The evidence shows that the decedent, Clarence J. Quam, was an employee of the Street Department of the City of Fargo, North Dakota. On the morning of March 30, 1953, at 8 o'clock a. m. he and a fellow worker, Frank Laucks, were directed by Mr. Joe Sleeper, street foreman of the City of Fargo, to clean out the rubbish in the subway under the Northern Pacific Railway, located on 10th St., between First Avenue and Northern Pacific Avenue, in the City of Fargo. For that purpose they were assigned a two or two and a half ton, Chevrolet, dump truck, lately painted a bright, orange color and recently washed. It was driven by Mr. Quam. They went to their work at 8:15 o'clock a. m. Before they entered the underpass the tail light of their truck was burning. They carefully cleaned the tail light before they entered the underpass and again before they began their work. It showed a bright light. The day was cloudy but there was no moisture in the air. The visibility was fairly good. The tunnel was 32 feet wide from curb to curb and 281 feet long. On the sides were supporting pillars, 9 feet apart. There were electric lights on in the tunnel and daylight entered from both ends. They entered from the south on the east lane of the highway about four or five feet from the east curb. They first stopped about 15 feet in the tunnel where daylight from the entryway reached them, and cleaned the rubbish along the curb. Then they drove on about 15 feet and again stopped their truck, putting on the emergency brakes. While Mr. Laucks cleaned along the front side of the truck Mr. Quam cleaned along the rear of the truck. They almost finished loading the truck.

The defendant was a teacher at the Agricultural College. He lived at 423 10th Street South. On the morning of March 30, 1953, he drove his Ford car north on 10th Street towards the Agricultural College. That was his usual route when going to work. He was driving without lights. At the south entrance to the underpass was a "slow" sign. He says he entered the underpass at about 20 miles an hour; that he may have gained speed in going down the approach but not over 25 miles per hour which was the speed limit. He claims it was so dark in the underpass that he could not see Quam where he was shoveling the refuse, nor the city truck parked some 20 feet ahead of Quam. The time was about 9:15 a. m. He claims he saw Quam first as he was entering the tunnel and that Quam was then only three or four feet in front of him; that Quam was then ten feet out from the curb and 15 or 20 feet back of the truck shoveling refuse with his back towards the oncoming car; that he was wearing blue denim jacket and trousers. Defendant claims to have tried to put on his brakes and to turn to the left. There were no tire marks. It was then too late for defendant to avoid Quam who was hit by defendant's right front fender. Quam fell onto that fender, was carried forward about 20 feet and rolled over to the side of the car. The defendant's car hit the rear of the truck on the left side of center. The impact pushed the truck ahead about ten feet. The street and underpass were dry. Defendant's car stopped about five feet behind the truck. It was then abreast of the 5th column of the underpass, about 37 feet from the entrance to the tunnel. The right front of defendant's car was badly smashed. Defendant himself was hurled forward breaking three ribs, besides receiving a gash on his chin requiring three stitches. One spoke in the steering wheel of his car was broken. Laucks immediately had an ambulance called and Quam was taken to the hospital where he died the next day from the injuries he received. Defendant was also taken to the hospital but was discharged three days later.

The evidence shows that the defendant had driven through this underpass repeatedly and was well acquainted with the surroundings. It was defendant's duty to exercise care commensurate with the situation. Schaller v. Bjornstad and Erlandson, 77 N.D. 51, 40 N.W.2d 59. Yet he admits that he allowed his speed to increase as he was going down the approach to the underpass. He claims that on account of darkness in the underpass he could not see anything in the tunnel, yet at an increased speed he entered the underpass without lights and without blowing his horn. The testimony is that others had driven through that underpass just before he entered it and had passed the city truck and the men loading it without any trouble. Witnesses who came to the approach to the underpass immediately after the accident testified they could see the truck and the men around it from there.

Defendant also claims that the reason he did not see the tail light of the truck was that Quam was standing between him and the tail light. There is some difference in the testimony as to where Quam was standing. The defendant was driving in the middle of the east lane, about five feet from the east curb and picked up Quam on his right fender. The truck was also in the middle of the east lane about the same distance from the curb. The tail light was about a foot left of center of the truck. Since the driver was necessarily on the left side of his car, that would raise a question whether Quam was standing directly between the tail light and the defendant. According to plaintiff's testimony the city truck was about 30 feet from the entrance to the tunnel. Defendant claims Quam was standing 15 or 20 feet behind the truck. Laucks claims that there was daylight fifteen feet inside the tunnel where they first stopped to load. Quam would then be standing in daylight 10 or 15 feet from the entrance.

The defendant, however, contends that if he was guilty of negligence in connection with the accident the decedent, Mr. Quam, was also negligent and that his negligence contributed to the fatal accident. That, therefore, defendant cannot be held liable.

■ It is argued by the defendant as showing contributory negligence of the decedent, Quam, that he had failed to erect signs and barricades to warn the motorist of danger. There was a "slow" sign on the street just prior to the approach to the underpass. The city truck in the underpass was freshly painted a bright orange. It's lights were on and the red rear light had been carefully cleaned as the truck entered the tunnel. That would serve to give some warning of work being in progress and was all that was furnished to Mr. Quam for that purpose. Mr. Sleeper, the street foreman, was in charge of all barricades and warning devices. If there was any negligence in not furnishing sufficient warning devices at the entrance to the underpass that was not chargeable to Mr. Quam. Assuming there was such negligence coinciding with negligence of defendant and contributing to the accident that does not relieve the defendant. He would still be liable. In Leonard v. North Dakota Co-op. Wool Marketing Association, 72 N.D. 310, 6 N.W.2d 576, 581, this court said:

"To constitute a negligent act the proximate cause of injury so as to sustain a recovery, it is not necessary that the act be the sole cause of the injury. Where the injury is the result of separate and distinct acts of negligence by different persons operating and occurring simultaneously and concurrently, each act may be regarded a proximate cause and recovery may be predicated upon either or both acts."

Defendant further claims contributory negligence on the part of decedent Quam, by his standing negligently in a dangerous place without any lookout or attempt to save himself. However, while he was so standing, unseen by anybody before the fatal accident, he is presumed to have been in the exercise of due care for his own

safety and life and the burden of proof to overcome that presumption·of due care is on the defendant.

▆▆▆▆ Plaintiff argues that in many jurisdictions courts have recognized that a worker on the streets or highways is not to be charged with the same degree of care as an ordinary pedestrian. In the pursuit of his employment such a worker is unable to keep up a continuous vigilance for his safety. A more stringent duty is, therefore, put upon the driver of a car approaching him to watch out and avoid injuring him. It has been held that while the workman in the streets must use such care and observation for his safety as it is possible for him to do under the circumstances, yet, it is the duty of the motorist to exercise special care in the operation of his automobile by having the same under control and keeping a reasonably careful lookout, so as to avoid collision with one in lawful pursuit of work upon the highways. Murray v. Atlantic Coast Line R. Co., 218 N.C. 392, 11 S.E.2d 326; 60 C.J.S. Motor Vehicles § 391, p. 956; 2A Blashfield Cyc. of Automobile Law and Practice, Perm. Ed. Section 1571, p. 505; Annotation, 5 A.L.R.2d 757. In Pacific Portland Cement Co. v. Bellamy, 9 Cir., 187 F.2d 701, 702, the court says:

"The 'Workmen in the Street' rule is to the effect that, *where a workman must necessarily remain physically in the street in the presence of moving traffic* in order to accomplish his assigned work, ' "*There can be and there is no duty imposed on (such) a workman to be constantly on the lookout for motor vehicles;* on the contrary, it is the duty of drivers of vehicles to observe the street laborers and to avoid contact with them. *It is not negligence as a matter of law for (such) a workman to keep his mind on his work or to fail to look and listen for approaching vehicles.* He may properly assume that the automobilist will not be guilty of negligence in running him down

without warning." ' " (Emphasis supplied.)

Our legislature clearly adopted this rule concerning workmen working on the highways when it enacted Section 39–0705, NDRC 1943, which provides as follows.

"The provisions of chapter 8 to chapter 13, inclusive, of this title, (Motor Vehicle Code) applicable to the drivers of vehicles upon the highways, shall apply to the drivers of all vehicles owned or operated by this state or any county, district, or other political subdivision of this state subject to such specific exceptions as are set forth in such chapters. *The provision of such chapters shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work.*" (Emphasis supplied.)

It is conceded that Mr. Quam was working on the highway. The question raised is whether even under the "workmen in the street" rule he was negligent of his own position and that such negligence contributed to the accident.

The evidence shows that decedent, Quam, was stationed near the south end of the tunnel of the underpass, shoveling the refuse on the highway into the truck. He was standing in the proper place for his work and where he had a legal right to be. No negligence is shown in that connection. Defendant claims decedent, Quam, was standing with his back towards approaching traffic, but admits he was busy at his work. There is no evidence that Quam was standing that way except for the half second defendant saw him prior to the accident. There is no evidence showing he did not keep a lookout consistent with his employment. He had been working for a little while before the accident happened. During that time other cars had passed Quam and the truck safely. He had a right to rely on the presumption that any-

one coming at that instant would be living up to the care required under the circumstances. He was not obliged to neglect his work to keep a constant lookout for those, who, like the defendant, failed to live up to the duty to keep the proper lookout for the decedent as a workman in the street and to give him proper warning. State Compensation Ins. Fund v. Scamell, 73 Cal.App. 285, 238 P. 780, 782 and cases cited. The evidence does not show any contributory negligence on the part of the decedent. Defendant has not overcome the presumption that decedent was at the time in the exercise of due care.

The defendant cites the cases of Staib v. Tarbell, 65 S.D. 304, 273 N.W. 652, the case of Smith v. Biggs, 4 Cir., 1955, 223 F.2d 839; Manetta v. United Traction Co., 3 Cir., 174 F. 207, and the case of Hoelmer v. Sutton, 207 Minn. 140, 290 N.W. 225. In all of those cases, however, circumstances are shown which indicate that there was evidence of contributory negligence on the part of the injured person.

■ There was no error in the denial of the motion to direct a verdict for the defendant nor in the denial of the motion for judgment notwithstanding the verdict.

The defendant specifies twenty errors of law under which he claims that he is at least entitled to a new trial. Most of these errors are claimed to be in the instructions.

■ Concerning the interpretation of instructions, this court in McGregor v. Great Northern Ry. Co., 31 N.D. 471, 154 N.W. 261, 266, Ann.Cas.1917E, 141, said:

"No rule is better settled than that the court's instructions must be considered as a whole. The charge is entitled to a reasonable interpretation. It is construed as a whole, in the same connected way in which it was given, upon the presumption that the jury did not overlook any portion, but gave due weight to it as a whole; and this is so, although it consists of clauses originating with different counsel and applicable to different phases of the evidence. If, when so construed, it presents the law fairly and correctly to the jury, in a manner not calculated to mislead them, it will afford no ground for reversing the judgment, although some of its expressions, if standing alone, might be regarded as erroneous, or because there may be an apparent conflict between isolated sentences, or because its parts may be in some respects slightly repugnant to each other or because some one of them taken abstractly, may have been erroneous."

This is cited with approval in Ramage v. Trepanier, 69 N.D. 19, 28, 283 N.W. 471. See also Moe v. Kettwig, N.D., 68 N.W.2d 853, 863. We will consider the instructions with these rules in mind.

■ The defendant presented seven instructions which the court refused to include in the instructions to the jury. A close examination of these requests and of the court's instructions to the jury disclose either that the same principles were included in the charge to the jury or that they did not apply in this case.

One of these requests was to the effect that the jury would not base its verdict on speculation and conjecture. Another one was with regard to the failure of lookout. Three were with regard to the amount of damages. The principles conveyed in all of these requests were fully covered in the instructions the court gave the jury.

■ Another request refused was an instruction that damages should be allowed under Section 32–0303, NDRC 1943, which provides: "Damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof or certain to result in the future." Even if that could have been properly given, the failure to do so was error without prejudice as the court instructed the jury that in an action brought for wrongful death "the jury shall give such damages as it finds

proportionate to the injury resulting from the death to the persons entitled to the recovery." See Section 32–2102, NDRC 1943. That fully covers the situation in the case at bar.

Then there was a request to charge the provisions of Sections 39–1119 and 39–1022, NDRC 1943. These sections, however, do not apply under the facts in this case.

The court instructed fully on the "workmen in the street rule" and differentiated between the care a driver owed a workman in the street from that owed to the ordinary user of the highways. The defendant's objections to some of those instructions are based on his contention that more of the rules applying to ordinary users of the highways should apply to the workmen in the street. We have considered these instructions of the court carefully and believe they all applied under the evidence in this case. There is no error in the instructions of the court on that subject.

The defendant alleges that the court erred in several of its instructions when it stated a principle of law, as, for instance, "That the driver of a vehicle must anticipate objects, * * *," "must guard against collision," must drive at "such speed as to be able to stop within a distance he can clearly see ahead," "must exercise care commensurate with the situation" and "must observe such workmen, * * *," He also alleges error along the same line in the instruction of the court on damages where it enumerates the items that the jury may consider in determining those damages.

 Defendant claims that the jury would infer that such statements in the court's instructions would imply that the rules stated and the items enumerated, which might be considered as elements of damages, were "actually proven." That conclusion is not warranted. The instructions leave entirely to the jury the determination of whether or not the defendant had violated the rules in question or wheth-

er the facts had been established. These instructions stated the law which was pertinent to the issues and were given to the jury to be applied by them if they found sufficient facts to warrant the application. In 88 C.J.S. Trial § 280b, p. 753, the rule is stated as follows:

"It is not an assumption of fact for the court merely to state an abstract legal proposition; and an instruction which merely asserts such a proposition without attempting to apply it to the facts of the particular case is not open to the objection that it assumes the existence or nonexistence of facts."

In Zabinski v. Novak, 211 Wis. 215, 248 N.W. 99, 100, the rule is laid down as follows:

"No particular statement of the rule is prescribed for universal use in instructing juries upon questions of negligence. The trial judge, to discharge the duties imposed on him, must sufficiently embody in his instructions the law applicable so that the jurors may be advised of the elements or ultimate facts to be found, and the standards of conduct required of the individual whose acts are under consideration. The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired."

After a general charge on the law of damages the trial court in this case stated:

"If under the evidence and the court's instructions, you find that the plaintiff is entitled to recover, you may consider the following facts in determining the pecuniary loss of the plaintiff and her minor children;

"(a) The value of the loss of the support by the deceased, Clarence

Quam, of his wife and minor children. In this connection, you are instructed that the law will imply a pecuniary loss to the wife and children by the death of the husband and father if he was discharging his obligation to support them and was discharging it immediately prior to his death. The presumption is that the pecuniary loss suffered by them as a result of his death is a substantial one.

"(b) The earning capacity of the deceased, Clarence Quam, * * *

"(c) * * *."

Then follows an enumeration of different items which may be considered by the jury, labeled (c) to (k), inclusive. Finally the court said:

"All such damages, if any, included in items (a) and (k), both inclusive, could not exceed the sum of $100,000, the amount demanded in the complaint, or you may allow any sum less than that amount which you find from the evidence and these instructions will be just and fair compensation to the plaintiff for such damages."

■ In addition to claiming that all of the items were statements of facts which the jury would have to assume as proven, the defendant makes special assignments of error on the submission of some of these items to the jury. One of these items was "the expenses of education of the children during minority." Defendant claims this is an improper element of damages since the expense of education of children does not have any relevancy to the contributions of money or services that could reasonably be expected from the decedent. The evidence showed, however, that the decedent, Mr. Quam, was very much interested in the education of his children, and contributed thereto in money and services. Clearly that is an item for consideration by the jury in establishing the damages on account of Mr. Quam's death. Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897;

5 Sutherland on Damages, 4th Ed. Section 1265, p. 4881.

■ Another item claimed as erroneous is: "Loss of any and all services which the children would probably have received from their father including the monetary value of the nurture, instruction, moral and physical, training and protection which a father gives to his children. In that connection the law is not limited to the period the children are minors if you conclude from the evidence that such services would have continued after the children attained their majority." In Dahl v. North American Creameries, Inc., N.D., 61 N.W. 2d 923, we said:

"The jury in considering the loss to the plaintiff by the death of the father or mother is not limited to the time during which she is a minor if it can conclude from the evidence that such services would have continued after she attained her majority."

The court did not err in including that item for the consideration of the jury.

■ Another item in the enumerated list given by the court to the jury and excepted to by the defendant is: "The possibility that deceased might be able to better his position by continued service for the City of Fargo." The evidence showed that Mr. Quam was working under city's civil service rules and that the salary would automatically increase the 1st day of July each year until 1957, and based thereon his salary at the time of the trial would have been $308. There is no evidence showing that he was in any danger of losing his job. In fact, the evidence shows to the contrary. That evidence makes it reasonably certain that the decedent's salary would have increased had he continued in the service.

In Senn v. Lackner, 91 Ohio App. 83, 100 N.E.2d 419, 432, 107 N.E.2d 558, it is held that in determining pecuniary injury suffered by the next of kin of the decedent

the jury has a right to consider not only the earnings of decedent at the time of his death but, also, the reasonable expectancy of earnings in the future. Citing cases.

In 25 C.J.S. Death § 123, p. 1292, it is said that the weight of authority is to the effect that evidence as to earning capacity of decedent is not necessarily limited to a showing of what he was earning at the time of his death and that evidence tending to show the probability of decedent's earning a greater income may be received. See also St. Louis Southwestern Ry. Co. v. Bounds, Tex.Civ.App., 283 S.W. 273; Dahl v. North American Creameries, Inc., N.D., 61 N.W.2d 916; Kennelly v. Northern Pacific Ry. Co., 48 N.D. 685, 186 N.W. 548. The court did not err in making that charge with that evidence in the case.

 Defendant objects to the court's instruction setting out the ordinance of the City of Fargo regarding duty of the driver of a motor vehicle in approaching a curb or a point where the view was obstructed on the grounds that the ordinance was not pleaded in the complaint. He cites Blackstead v. Kent, 63 N.D. 246, 254, 247 N.W. 607, which, however, is distinguishable from the case at bar. In Enget v. Neff, 77 N.D. 356, 43 N.W.2d 644, 648, this court cites with approval, 9 Blashfield Cyc. Automobile Law and Practice, Perm.Ed. Section 5953, as follows:

"If the observance of an ordinance is a condition precedent to a right of action, or if the action is based upon an ordinance, it must be alleged as well as proved, If, however, the action is based generally on negligence, the acts complained of constituting a violation of the ordinance, the ordinance, and breach thereof may be received in evidence, not as conclusive proof of the negligence charged, but as some evidence which the jury may consider. This is a general rule."

The complaint in the case at bar alleges negligence generally and particularly in

respect to proper warning and proper lookout, which are among the items covered by the ordinance in question. Therefore, the instruction on the ordinance was relevant and material as bearing on defendant's duties which were involved in this case. See also 38 Am.Jur. Negligence, Section 330, p. 1028; 65 C.J.S. Negligence § 201, p. 942.

The defendant assigns as error that the court gave an instruction to the jury on the duty of an employer to provide adequate safeguards for his employees and failure to do so might be negligence, which, however, could not be attributed to the decedent or relieve the defendant. He claims that did not apply in this case. As heretofore stated, that did apply as it was the duty of the city to furnish barricades or warning devices. Under the evidence in the case the instruction was proper. See Leonard v. North Dakota Co-op. Wool Marketing Association, supra.

 In connection with the instruction on contributory negligence the court instructed the jury to the effect that it is presumed that a person who has suffered death by accident, was at the time, because of the instinct of self-preservation, in the exercise of due care for his own safety and life, and that the burden of overcoming that presumption of due care was on the defendant. Appellant admits the presumption but claims that it does not apply where there is an eyewitness to the accident and he contends that the defendant, Norman Wengert, was such an eyewitness. While some courts hold that the presence of eyewitnesses may annul such presumption yet the courts of many states now hold that the mere presence is not enough. In Jasinuk v. Lombard, 189 Minn. 594, 250 N.W. 568, 569, it is said:

"The testimony of eyewitnesses might be such * * * as to annul the presumption, but their mere presence is no bar to its consideration by the triers of fact."

In Bowers v. Chicago, M. & St. P. Ry. Co., 141 Minn. 385, 386, 170 N.W. 226, 228, it is held:

"The eyewitness did not observe the men but for a few seconds before being struck. The jury might have concluded that due care did not require the deceased to look to the rear during that short interval, provided he had so done immediately before the witness noticed him, and as to that the presumption might apply."

See also Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N.W. 220, 224 and cases cited.

Defendant claims that he first saw the decedent when only four feet away from him. At 20 miles an hour that gave defendant less than a half second to observe decedent. That would not give defendant any time for observation as to whether decedent was exercising due care. In Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19, 23, it was said:

"Such an eyewitness driver who testifies that he first saw the lady he struck and killed a fraction of a second before the impact is not such an eyewitness as will prevent the application of this self-preservation rule." See also Breker v. Rosema, 301 Mich. 685, 4 N.W.2d 57, 141 A.L.R. 867.

We conclude, therefore, that the instruction of the court on that principle was not error under the circumstances of this case.

 Errors are assigned on the instructions of the court to the jury on contributory negligence and last clear chance. As heretofore shown there is no evidence of contributory negligence by the decedent. Those instructions, therefore, even if they were erroneous, are not prejudicial.

When we consider the instructions as a whole according to the rule in McGregor v. Great Northern Railway Co., supra, there were no prejudicial errors in the instructions of the court.

Defendant contends that the verdict is excessive and that he is entitled either to a reduction of the verdict or a new trial on that account. The verdict was for $45,976.69. Of that $967.69 was for medical and other expenses so that general damages were allowed in the sum of $45,000.00.

 Section 32–2102, NDRC 1943, provides for damages in cases of wrongful death as follows: "In an action brought under the provisions of this chapter, the jury shall give such damages as it finds proportionate to the injury resulting from death to the persons entitled to the recovery.

In Dahl v. North American Creameries, Inc., N.D., 61 N.W.2d 916, 922, this court held:

"The rights of action in such matters being entirely statutory the statutory rule is the only measure of damages. Under the statute the amount of damages is left entirely with the jury except that the damages shall be proportionate to the injury resulting from the death of the person entitled to recover. In an action for damages for wrongful death it is the province of the jury, under proper instruction from the court, to determine the amount of the damages from the facts and circumstances of the case before it. The jury in fixing the damages has a wide range of discretion."

In Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897, 915, this court said:

"In actions for damages for wrongful death the jury is vested with a large discretion in fixing the amount of damages, 25 C.J.S. Death § 115, p. 1265; 5 Sutherland on Damages, 4th Ed. pp. 4892–4894, and while the discretion of the jury in such cases is subject to the supervision of the court, a verdict may be interfered with on the ground of excess only where it is manifest that the amount awarded is not within the evidence and was influenced

by passion or prejudice. NDRC 1943, 28–1902; Whaley v. Vidal, 27 S.D. 642, 132 N.W. 248; Whaley v. Vidal, 27 S.D. 627, 132 N.W. 242; 25 C.J.S. Death §§ 115, 116, pp. 1266–1267."

In 16 Am.Jur. Death, Sec. 202, p. 138, the rule is stated as follows:

"By the great weight of authority, where the damages to be awarded for wrongfully causing the death of a person are compensation to designated relatives for their pecuniary loss, both immediate and prospective, so far as the loss is prospective, the gross amount thereof should be reduced to its present worth."

 The meaning of the word "pecuniary" as used in this connection has always been given a liberal construction by the courts. It does not confine the damages to the loss of money or what may be based on money. While it does not include any damages on account of the loss of companionship of the deceased, it does include damages for any financial benefit that would be received by the family from the work and assistance that decedent would be in taking care of and bringing up the family. Umphrey v. Deery, supra. In determining the amount of damages to the plaintiff the jury had a right to consider, in addition to actual monetary damages, the value of the nurture and instruction, moral and physical of the children, "such as the loss of the care and protection of a husband and father, his counsel and advice and other intangibles, the award for which must be left largely with the discretion of the jury." Geier v. Tjaden, N.D., 74 N.W.2d 367. This is not limited to the time the children are minors. There is no such limitation in the statute nor in the value of the father's services and protection to his children. Dahl v. North American Creameries, Inc., N.D., 61 N.W.2d 916. The jury also had a right to consider any assured increase in the income of the father.

The evidence shows that Clarence Quam was at the time of the accident, 43 years of age and had a life expectancy of 26.81 years at that time. His surviving widow, the plaintiff, Inga Quam, was 45 years of age and had a life expectancy of 25.21 years. They had four children, Ellen C. Quam, 13 years of age; Corinne Quam, 12 years of age; Burton Quam, 9 years of age and Neil Quam, 7 years of age. Mr. Quam was in good health. He was a sober, industrious, home-loving man. He had been working for the City of Fargo for two years and at the time of the accident was receiving $262 per month. He was classified as a "heavy equipment operator" and was working under the city's civil service rules and regulations whereby he was automatically entitled to pay increases on the first day of July of each year. On July 1, 1953 his salary would have increased to $277, on July 1, 1954, to $287, on July 1, 1955, to $298, on July 1, 1956 to $308 which was the maximum. On occasions he worked overtime and was paid for time and a half. Mr. Nystul, who was Street Superintendent, testified: "I considered him a good man. He did a good job for me. He did everything I asked him to do and as completely as he was able to do it and he did a good job." He got along well with his fellow employees and superiors. Mrs. Quam testified that he was of a frugal nature. She said his personal expenditures, exclusive of food would not exceed the sum of $25 per month.

 The matter of the amount of damages is ordinarily within the province of the jury and unless the verdict is so excessive as to indicate passion and prejudice the courts do not often reverse the finding of the jury and the trial court. Here the jury had to consider the loss to a wife and four young children of the husband and father who seems to have been a model in his attention to his family and home. The jury could well have found from the evidence that in addition to his personal services he contributed to the home at least $200 per month. That is allowing him $62 for his personal expenses which Mrs. Quam estimated at only $25 per month and not

taking into consideration the increase in salary that he seemed well assured of. The present value of $200 per month for 26 years, which is a little less than Mr. Quam's life expectancy at two per cent is $48,812. At three per cent, $43,598. Thus the prospective money damages alone without taking into consideration any future increase in his earnings, about equals the verdict upon the present value basis. Furthermore, that does not take into consideration his services rendered the family by a husband and father. We consider the verdict reasonable. There is no evidence of passion and prejudice.

Defendant claims that that is not in accord with the $53,568 verdict in the case of Geier v. Tjaden, supra, because the life expectancy of the decedent in that case was more than 40 years while it is only 26.81 in this case. The decedent, however, in the case at bar was earning more per month than the deceased in the Geier case and his prospects of increased earnings were better. Further in the case at bar there were four children to support while in the Geier case there were only three children.

Defendant submits many cases to support his contention that the verdict here is higher than generally awarded. The plaintiff also submits many cases showing that the verdict is reasonable in comparison with many other cases. In every case, however, there is a difference in the facts which the jury would take into consideration. None of them, therefore, can be considered as authority on what is a reasonable verdict under the facts in this case. Neither the verdict nor the alleged errors at law warrant a new trial.

The defendant assigns as an error the ruling of the district court in denying his motion for a mistrial. Mr. Shermoen, plaintiff's attorney, in his argument to the jury in referring to the loss to the family of Mr. Quam, said:

"They have lost the breadwinner of the family. It is a hardship in this case with these minor children who still, at their age, have to be dependent on the head of the household. Mrs. Quam now must do that by herself. She must render this service, and I say to you I do not want you to believe that when I refer to that I am asking for your sympathy. I am not. That is not a proper element of damages. But you do realize that the breadwinner in your family brings in—what they brought in in the last five years.

"Mr. Oelhert: We object to that as improper argument, and must move for a mistrial at this time, the reference to what the jury thinks, that is improper argument. I am sorry I must intrude.

"The court: I think we had better do this out of the presence of the jury.

"Mr. Oelhert: It is entirely up to Your Honor. I make it a matter of record for what it is worth.

"The court: The motion is denied."

Nothing further was said. The attorney did not ask to have the jury admonished. It does not appear that the matter was considered again and the defendant does not in any way point out how that language warranted a mistrial. In the case at bar it seems that the objection was made merely for the record and counsel did not ask for a cautionary instruction.

Where the defendant alleges misconduct on the part of an attorney in his argument to the jury and relies on the same as grounds for mistrial he should not only object to the statement but request the court to take action by cautionary instructions to the jury or some suitable action. State v. Knudson, 21 N.D. 562, 132 N.W. 149.

To warrant the granting of a motion for a mistrial something must have happened during the trial showing that to proceed further would be unjust.

In Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282, 285, we held:

"The declaration by the trial court of a mistrial is an extreme remedy to be

resorted to only when there is a fundamental defect in the proceedings of a trial or when something has happened during the course of the trial which makes it evident that further proceedings therein would be productive of manifest injustice."

To guard against any injustice by remarks of counsel the court gave the following instruction:

"If the counsel upon either side during the course of trial or during the heat of argument have made any statements not warranted by the evidence, you should wholly disregard such statements in arriving at your verdict."

The court committed no error in denying the motion.

Finding no reversible error in the record the judgment of the district court is affirmed.

BURKE, JOHNSON, SATHRE and MORRIS, JJ., concur.